[No. 22515.   Department Two.   August 11, 1930.]

The State of Washington, *Respondent*, v. Frank
Dalton, *Appellant*.[1]

*W. C. Donovan,* for appellant.

*Charles W. Greenough* and *Ralph E. Foley,* for respondent.

Main, J.—The defendant was charged with unlawfully driving and operating a motor vehicle upon a public highway while under the influence of intoxicating liquor. The trial resulted in a verdict of guilty. Motion for new trial being made and overruled, the defendant appeals from the judgment and sentence.

Two questions are presented: First, the sufficiency of the evidence to sustain the verdict; and, second, claimed misconduct of the jury. These questions will be considered in the order stated.

[1]Reported in 290 Pac. 989.

The arresting officer, in part, testified as follows:

"Q. I will ask you to state to the jury in your own way just what occurred about the 19th of May, 1929. A. This was on a Sunday afternoon—in the evening, rather, May 19. I was patrolling the Appleway highway and along about four o'clock I started in towards town coming west. And I come to about a mile and a half east of Opportunity and drove off the pavement and on to the shoulder of the road and parked my car there, and I was watching the traffic as they were coming and going; and while I was parked there I noticed a Velie coupe coming towards me; it was going east. I noticed the way the car was weaving; part of the time he would have two wheels off the pavement and on the shoulder of the road, and then he would come back on the highway again, and then off the pavement again. About the time he got even with me he called out—I understood him to holler out 'Hello, George.' Then as I got ready to turn to go out after him there was a string of cars coming from the east so I let those cars go by, and finally I started out after him, and I stopped him in probably a half a mile or so. When I got alongside of him I told him to stop, and he had a little difficulty coming to a stop. Finally after he did come to a stop I noticed it was Mr. Dalton, and he started talking to me and I could smell moonshine whiskey on his breath. So I asked him to get out of the car and he finally got out, and he staggered just after he got out, and I told him he was under arrest and I had to take him in. So I also asked him if he had anything in the car, and he made the remark if I could find anything in the car I could do better than he could. So I searched around back of the front seat, and there was a coat there and underneath this coat I picked up a pint flask that had some moonshine whiskey in. So I got him into my sidecar and shortly after I started he was sound asleep, and he had been asleep all the way to the county jail. And he had also in the car two people with him, a girl and another man, and I examined them to see whether they were intoxicated and I couldn't find anything, and I asked the man that was with Mr. Dalton whether he would drive the car back

into town, and he said he would, so I followed this car all the way in to town to the jail, and that man drove the car fine, that is, he didn't wobble at all; he drove it just as straight as any sober man could. . . . Q. You say that the defendant was asleep most of the time? A. He was asleep most of the time in to the jail. He was asleep after I drove up to the jail. I had to wake him up. Q. Did you have to assist him into the jail? A. Oh, yes, I assisted him into the jail. There was also an ambulance at the time. One of the men—I didn't get his name—he come over to help me get him out of the sidecar.''

The evidence offered by the appellant disputed, in all material respects, that of the officer whose testimony is quoted. The question was one for the jury. If the facts are as the officer stated them to be, the jury had a right to find that the appellant was driving the automobile while under the influence of intoxicating liquor at the time he was arrested.

The misconduct of the jury is sought to be shown by the affidavit of the attorney for the appellant, which sets forth statements which two of the jurors had made to him relative to matters that occurred in the jury room. There is no affidavit of any juror. Misconduct of the jury, if there be misconduct, based upon what occurred in the jury room, cannot be shown by the affidavit of a third person based upon hearsay. In *Lindsey v. Elkins*, 154 Wash. 588, 283 Pac. 447, it is said:

"Unless the appellant's motion for a new trial on the ground of misconduct of the jury was supported by affidavits, the motion should have been denied. The unsworn statements of the two jurors are not sufficient to support the motion. Supporting affidavits being necessary, do the affidavits of the attorneys reciting what they were told by a number of the jurors satisfy the rule? Manifestly not. The affidavits are nothing more than hearsay statements and such affidavits are

not sufficient to invoke the discretion of the trial court to grant a new trial."

The cases of *Maryland Casualty Co. v. Seattle Electric Co.,* 75 Wash. 430, 134 Pac. 1097; *Johnson v. Smith,* 118 Wash. 146, 203 Pac. 56; *State v. Prince,* 154 Wash. 409, 282 Pac. 907, are to the same effect.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.