COMMONWEALTH *vs.* GEORGE E. CURTIS.

Bristol.     October 1, 1945. — October 30, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Homicide. Error,* Whether error harmful. *Practice, Criminal,* Acquittal by reason of insanity; Ordering verdict; Exceptions: whether error harmful.

The denial of a motion for a directed verdict of not guilty at the trial of an indictment for murder was prejudicial error although the verdict was not guilty by reason of insanity, where the evidence did not warrant a finding that the defendant committed the crime.

A verdict of guilty of murder of one killed in his home by blows on the head would not have been warranted by evidence showing at most that announcement of the discovery of the body was made by the

defendant, a neighbor of the victim, who was acquainted with his habits and affairs and knew the day before the murder that he had on his person a substantial sum of money; that the money was missing after the murder; and that the defendant had an opportunity to commit the murder.

INDICTMENT, found and returned on June 16, 1943.

The case was tried before *Forte*, J.

*W. A. Bellamy*, for the defendant.

*F. E. Smith*, District Attorney, for the Commonwealth.

WILKINS, J. The defendant was tried upon an indictment for the murder of James Geanecopoulos, and the jury returned a verdict of not guilty by reason of insanity. He accordingly was committed to Bridgewater State Hospital. G. L. (Ter. Ed.) c. 123, § 101. The defendant filed a claim of appeal and an assignment of errors. See G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended.

One ground of error assigned is the denial of the defendant's motion for a directed verdict of not guilty. Although found not guilty by reason of insanity, the defendant was aggrieved unless there was evidence warranting a verdict of guilty. This we think was lacking. Evidence which does not go beyond showing that the defendant had an opportunity to commit the crime is insufficient. *People v. Holtz*, 294 Ill. 143, 154. The question of guilt is "left to conjecture or surmise and has no solid foundation in established facts." *Commonwealth v. O'Brien*, 305 Mass. 393, 401. *Commonwealth v. Ehrlich*, 308 Mass. 498, 500. Compare *Commonwealth v. Leach*, 160 Mass. 542, 551.

On April 15, 1943, about 1:40 P.M., the deceased, a poultry farmer, who lived alone in a small house in a sparsely populated section of Berkley, was found dead in the kitchen, where he apparently had been sorting or washing eggs. The body was lying face down on the floor, indicating an attack from behind. There was a pool of blood near the head, which had been repeatedly struck by a weapon having a circular, ovoid, or elliptical surface area and a relatively small striking surface. There had been no struggle. Announcement of the discovery of the body was made by the defendant, also a poultry farmer. There was no evi-

dence that he had changed his clothing, which disclosed no blood stains, although blood had been plentifully spattered on the kitchen floor, walls and ceilings, and on dishes and other contents of the room. On the previous day the deceased had shown the defendant a roll of bills amounting to $1,400 which he had had in his overalls. This was missing, but none was traced to the defendant, who was not in financial straits, although in common with many others he could have found a use for more money if he had had it. Shortly after 9 P.M. on the previous evening the deceased had exhibited a roll of bills in a local store to the storekeeper and others. This was the last time he was shown to have been seen alive. A sum of $1,840 which the deceased kept in a trunk was untouched. The defendant resided with his wife on another farm about four hundred twenty feet from the deceased's house. He was the nearest neighbor and was alone at least two hours of the period between 8 A.M. or 9 A.M. and 12 M. when the death occurred. The deceased and the defendant had been friends since 1939, when the defendant took up residence in Berkley. They had worked back and forth on each other's property. The defendant had an intimate knowledge of the habits and the financial affairs of the deceased. In July, 1944, after the defendant's property had been sold, a peen hammer was found on the premises in a tool box of a tractor formerly belonging to the defendant. The hammer was the property of a plumber who in September, 1942, was working in the defendant's house and had reported it as missing. The defendant at that time denied having seen the hammer. It was not in the tool box on May 26, 1943. The blows on the deceased's head could have been inflicted with this hammer, but there was nothing about the hammer when found indicating that it had been so used or that the defendant had ever touched it. There were declarations of the defendant which the Commonwealth contends indicated a consciousness of guilt. The defendant said he saw a black sedan opposite the house of the deceased on the morning in question. He suggested to the police at various times that they interview certain persons, intimating that they were involved in the murder.

In the latter part of 1942, six months before the murder, the defendant, during a visit by his air raid warden, asked if there could be a conviction for murder on circumstantial evidence or if no weapon should be found, and there was some reference by the air raid warden to "the Lizzie Borden case." The material evidence discloses no basis for the conclusion that the deceased met death by the act of the defendant.

> *Verdict set aside.*
> *Order of commitment under G. L. (Ter. Ed.)*
> *c. 123, § 101, vacated.*