[No. 32708.   Department One.   February 16, 1954.]

THE STATE OF WASHINGTON, *Appellant*, v. JAMES MILTON LONG, *Respondent*.[1]

[1]Reported in 266 P. (2d) 797.

*Charles O. Carroll* and *John P. Lycette, Jr.*, for appellant.

HAMLEY, J.—James Milton Long was tried for the crime of burglary in the second degree. The jury found him guilty. He moved for an arrest of judgment, on the ground that there had been no proof of some element of the crime charged. The trial court granted this motion and denied defendant's alternative motion for a new trial. The state appeals. Respondent has made no appearance in this court.

Respondent was charged with willfully, unlawfully, and feloniously breaking and entering the premises of the Renton Hardware Store, in Renton, King county, Washington, on April 14, 1951, with intent to commit a crime therein, there then being on the described premises property which was kept for sale, use, and deposit.

The substance of the state's evidence, which was uncontradicted, is as follows: The Renton Hardware Store, located at Renton, King county, Washington, is a two-story structure with a basement. On the second floor, there is located a furniture department and three business offices. These offices are in the rear of the building, and have windows which face onto a parking area which is surrounded by other buildings. On the night of Saturday, April 14, 1951, some person broke the glass of one of these office windows and entered the building. The burglar ransacked the three offices, and papers from the various filing cabinets, desks, and a safe were strewn over the floor. Some seventy or eighty dollars in currency was taken from the safe.

The burglary was discovered by Howard McKeen, an employee of the store, on April 15, 1951. He summoned the Renton police. Officers from the police department went to the store and investigated the burglary on that and the following day. After their investigation had been completed on Monday, April 16, 1951, George Dobson, the manager of the store, directed Alice Timmons, the bookkeeper and office manager, to pick up the papers from the floor so that normal business operations could be resumed. She did this,

assisted by Arthur Lindberg, another employee. They placed these unsorted papers in the safe, which was then in a state of confusion, with papers, ledgers, and envelopes mixed up.

On the following Thursday, April 19, 1951, Miss Timmons started sorting out and arranging the various papers which had been placed in the safe after the burglary. While she was doing so, she found among them an envelope containing an employment slip from Archie MacDougall's Loggers Labor Agency, with respondent's name on it. Long had worked as a salesman for the hardware store earlier in 1951. This employment slip bears the date of April 14, 1951. Miss Timmons gave the envelope and slip to Dobson, who, in turn, took it to detective W. E. Frazee, of the Renton police department. None of the store employees nor police officers who testified had seen the employment slip before Miss Timmons found it on April 19, 1951.

Frazee and detective W. J. Tracey took the slip to Archie MacDougall's place. He told them (and the jury) that he had issued the slip to respondent sometime after two p. m., on April 14, 1951. The two detectives then went to the residence of respondent's sister and brother-in-law, in search of respondent. They saw him inside the house, and told a young boy to go inside and tell him someone wanted to see him. Respondent immediately left the house by a rear window and began running away. The officers gave chase, and respondent finally stopped when they threatened to shoot. Respondent was then placed under arrest.

Frank J. Burns, a bus driver for Lakeshore Lines, which operates between Seattle and Renton, picked up respondent as a passenger at the intersection of Fourth and Prefontaine place, in Seattle, between 8:10 and 8:15, on the evening of April 14, 1951. He took respondent to Renton on the bus, arriving there about 8:40 p. m. Burns remembered respondent because of the latter's resemblance to another bus driver for the company.

Between 9:30 and 10:00 the same night, a man resembling respondent as to size came to the cab stand of Philip Lyonais, in Renton, and asked to be taken to Seattle. The cab

stand is located about one block from the hardware store. Lyonais was unable to identify respondent as this man. The cab driver took his passenger to the Rose Street Tavern, located at Rose street and Rainier avenue, in Seattle. After the passenger had made a telephone call, he had the cab driver take him to Othello street and Empire way, where he left the cab at a street corner. This passenger was carrying a paper bag which looked like a shopping bag.

Respondent failed to appear in court on July 20, 1951, to enter his plea to the burglary charge. His bail bond was forfeited. He was apprehended a year and a half or so later, in Portland, Oregon, by the Federal bureau of investigation.

The only witness who was called by respondent was his sister, Mrs. Nellie Morrison. She testified that respondent came to her home on April 14, 1951, sometime between eight and ten o'clock p. m.; "possibly" at ten o'clock. She further stated that respondent had made several telephone calls that evening requesting that someone pick him up, and that her husband had finally done so. The home in which she was then living is located near Empire way in the south end of Seattle.

The sole question presented on appeal is whether, on this evidence, the jury was warranted in finding respondent guilty as charged.

The four elements which the state had to prove, as stated by the trial court in its unchallenged instructions to the jury, are:

"(1) That on or about the 14th day of April, 1951, the defendant broke and entered the premises occupied by the Renton Hardware Store, located at 3rd and Williams Street, in the City of Renton, County of King, State of Washington;

"(2) That the said breaking and entering said premises was with the intent to commit a crime therein;

"(3) That said premises was then and there a place wherein certain property was kept for sale, use and deposit;

"(4) That said breaking and entering so occurred in the County of King, State of Washington."

The last three elements were established beyond question. Part of the first element was established with like

conclusiveness, for it is certain that the premises were burglarized on the day in question by breaking and entering through a rear window. The only problem is whether, on this evidence, the jury could find that respondent was the person who committed this burglary.

■■ The evidence tending to establish this is wholly circumstantial. Verdicts in either civil or criminal cases, however, may be based entirely upon circumstantial evidence. *State v. Evans,* 32 Wn. (2d) 278, 201 P. (2d) 513. In order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish, or tend to establish, his innocence. *State v. Gillingham,* 33 Wn. (2d) 847, 854, 207 P. (2d) 737.

■ The jury was so instructed, and no exception was taken to the instruction. Thus, there inheres in the verdict of guilty a finding that the circumstances proved are consistent with respondent's guilt and inconsistent with his innocence. The court's only function is to determine whether the evidence was legally sufficient to support such a finding —that is, whether there is substantial evidence tending to establish circumstances on which such a finding could be predicated. See *State v. Donckers,* 200 Wash. 45, 93 P. (2d) 355; *State v. Cranmer,* 30 Wn. (2d) 576, 192 P. (2d) 331; *State v. Willis,* 37 Wn. (2d) 274, 223 P. (2d) 453.

The principal circumstance on which the state relies is the finding of the employment slip among the papers which were picked up off the floor of the office and placed in the safe. This slip bears the date on which the burglary was committed, contains respondent's name, and was issued to him on the afternoon of that day. It was a personal document which respondent would be unlikely to give to anyone else, or which anyone else would be likely to take from him. No witness had seen the document after its issuance until it was found on the Thursday following the burglary. There is no evidence tending to indicate that the paper was "planted" at the scene of the crime, for the purpose of in-

volving respondent.. The evidence, in fact, clearly negates any such theory.

In our view, the finding of this employment slip in the manner indicated warranted the jury in finding that respondent was present in the office on the night of the burglary. The misadventure of a defendant in leaving some identifying article at the scene of the crime has frequently resulted in obtaining a conviction which might not otherwise have been possible. For example, in *State v. Wilson*, 38 Wn. (2d) 593, 231 P. (2d) 288, the jury's finding that Utah Wilson was present at the scene of a kidnaping was sustained primarily on the basis of evidence that his fingerprints were on a recently-opened beer bottle which was found at the scene of the kidnaping.

The jury was warranted in finding that the circumstance of the finding of this employment slip was consistent with every other circumstance to which reference has been made, and that all such circumstances, considered together, were inconsistent with any hypothesis which would establish respondent's innocence. The other circumstances show that he was in Renton on the night in question, and so was available to commit the crime; as a former employee, he was familiar with the office arrangement of the hardware store; he fled to avoid arrest; and he later fled to avoid prosecution. The testimony of his sister, which was apparently intended to establish an alibi, failed to do so, or so the jury could have found.

In our opinion, the evidence was legally sufficient to support the verdict.

The order granting the motion in arrest of judgment is reversed.

GRADY, C. J., MALLERY, FINLEY, and OLSON, JJ., concur.