[No. 33794. Department Two. November 14, 1957.]

THE STATE OF WASHINGTON, *Respondent*, v. ELDON DOWAN HISER, *Appellant.*[1]

*Gavin, Robinson & Kendrick*, for appellant.

*Don J. Clark* and *Richard C. Smith*, for respondent.

HILL, C. J.—This is an appeal from a conviction on two counts of first-degree forgery, the documents involved being bank checks.

One issue only is presented: Did the state make a *prima facie* case? The defendant contends that the state failed to prove that the checks were not genuine, and that they would not have been honored if presented for payment.

It was established that the two checks were drawn by the defendant on the Selah State Bank, and that the name of Nellie Willard, as maker, was signed by him on both checks.

[1] Reported in 317 P. (2d) 1072.

One check, made payable to Bill Smith, was endorsed by the defendant, who signed the endorsement, Bill Smith, and received merchandise and cash therefor from the Midway Market near Selah. The other check, made payable to Spick Robson, was endorsed by a companion of the defendant, who also received merchandise and cash therefor from the Midway Market.

The manager of the market became suspicious and contacted a Nellie Willard, living in the Selah community and for whom the defendant's companion had worked. She advised the manager that she had not drawn the checks and that she had no account in the bank on which the checks were drawn. The Selah police were notified and the defendant arrested later that day.

The state, in its brief, says, "It was established that the checks presented . . . at the Midway Market were not drawn or made by Nellie Willard, whose name appeared on them." A more exact statement would be that the state established that the checks presented were not drawn by the Nellie Willard called as a witness by the state.

The checks were never presented to the bank; nor was there any testimony from the bank as to whether it had an account in the name of another Nellie Willard, or as to whether the checks would have been honored if presented.

 The spurious character of the instrument is, of course, an essential element of the crime of first-degree forgery. *State v. Peeples* (1912), 71 Wash. 451, 129 Pac. 108.

 The circumstances were extremely suspicious, and it was concededly doubtful whether there was an account in the Selah State Bank in the name of Nellie Willard on which the defendant was authorized to write checks. There is, however, a clear hiatus in the proof which cannot be filled by suspicion, speculation, or surmise. *Sutherlin v. State* (1939), 136 Neb. 809, 287 N. W. 614; *People v. Ciralsky* (1935), 360 Ill. 554, 196 N. E. 733. And if it could be so filled,

"The law does not look with favor upon the conviction of one upon circumstantial evidence when direct and positive evidence could be obtained by reasonable diligence. . . .

In other words, the rule is that the best evidence available should be supplied." *Wisdom v. State* (1932), 122 Texas Crim. Rep. 271, 274, 54 S. W. (2d) 533.

There is no justification for the state's failure to make a *prima facie* case; there is, however, an excuse which in fairness ought to be stated. Immediately following the opening statement by the state, the defense, departing from custom, made its opening statement. It was conceded that a handwriting expert would testify that the defendant drew the checks. It was stated that the defendant had been drinking heavily, and "Our evidence will show he did not then and does not now remember anything of this incident. He is apologetic and sorry."

The state was apparently thrown completely off guard by this statement, and proceeded on the theory that this was a concession that the checks were spurious. Why else should the defendant be "apologetic and sorry"? The state took time with almost every witness to bring out that the defendant was not drunk and knew what he was doing, evidently trying to forestall the anticipated defense of amnesia caused by intoxication.

One of the arresting officers stated he had shown the defendant the checks after he was arrested, and the officer testified that the defendant could not recall whether he had written them or passed them. The state drew the inference from this that if the checks were genuine, the defendant would have said so. Unfortunately, and we say unfortunately because we have no illusions as to the innocence of the defendant, that inference is not the proof of guilt that the law demands in a criminal case. The defendant was under no obligation to make any statement, and his silence on the question of whether the checks were spurious or genuine is no substitute for proof by the state.

The conviction is set aside for failure of proof, and the charges are dismissed.

DONWORTH, ROSELLINI, OTT, and FOSTER, JJ., concur.