[Nos. 36840, 36982. En Banc. June 4, 1964.]

FRASER MADILL et al., *Appellants*, v. LOS ANGELES SEATTLE MOTOR EXPRESS, INC., *Respondent.*

MABEL MUELLER, *Appellant*, v. LOS ANGELES SEATTLE MOTOR EXPRESS, INC., *Respondent.*\*

*J. P. Tonkoff* (of *Tonkoff, Holst & Hopp*), for appellants Madill.

*Brown, Hovis, Cockrill & Roy,* for appellant Mueller.

*Macbride, Martin & Shorts,* for respondent.

\*Reported in 392 P. (2d) 821.

HUNTER, J.—On the evening of July 13, 1960,. Norma Madill and Mabel Mueller sustained serious injuries when the left rear of the automobile Mrs. Madill was driving was struck by a motor freight truck on Highway 99, about one mile north of the overpass on the White Pass Highway.

An action for damages and personal injuries was brought by the marital community of Fraser Madill and Norma Madill against the Los Angeles Seattle Motor Express, Inc. This action was consolidated for trial with an action by Mabel Mueller, the passenger in the Madill car, against the express company for the injuries she sustained. In both actions, the express company counterclaimed for damages to the freight truck in the amount of $483.57.

The trial court entered judgment upon a verdict of the jury for the defendant motor express company, denying recovery to the plaintiffs Madill and wife and plaintiff Mabel Mueller, and entered judgment denying recovery to the defendant on its cross-complaint. In both actions the plaintiffs only appeal.

Prior to the collision, the Madill car entered Highway 99, driving north from the east ramp approach from the White Pass Highway. Mrs. Madill testified she looked to the north and south and saw no vehicles approaching. She proceeded north in the outside lane a short distance, at a speed of 50 miles an hour, until she approached a filling station and restaurant on the right side of Highway 99 at its intersection with Koontz Road. She decelerated her speed and was preparing to turn into the filling station, where she and Mrs. Mueller intended to have dinner, when the express truck without warning collided into the rear end of her car. The record shows the truck seemed to lurch over the left rear of the car, and to drag it. Mrs. Madill was thrown clear of the car to the east side of the highway; Mrs. Mueller remained in the car. They were taken to a hospital in Chehalis, 8 miles distant, where they received treatment by Dr. Ronald Maddox.

Wayne Bennett, the driver of the defendant's truck, had an entirely different version of the accident. He testified that he observed the Madill car to his rear when he was

200 to 300 yards north of the White Pass overpass. He was in the outside lane traveling at a speed of approximately 48 miles an hour, and the Madill car was overtaking the truck at a speed of 5 to 10 miles faster. The Madill car passed the truck, and when it was about a car length and a half ahead of the truck, swerved or cut in front of it and suddenly slowed down, causing an instantaneous collision.

The crucial issue on this appeal is raised by the assignments of error by the plaintiffs in both actions to instruction No. 19:

"If you find that the plaintiff, Mabel Mueller, voluntarily rode in a car driven by one who was under the influence of or affected by intoxicating liquor after plaintiff, Mabel Mueller, knew, or in the exercise of reasonable care should have known, the driver's condition, and if you find that a person exercising reasonable care would not have done so and plaintiff suffered injury as a proximate result of the condition of the driver, you will find the plaintiff, Mabel Mueller, guilty of contributory negligence."

The plaintiffs object to the instruction on the ground there is insufficient evidence in the case to raise the issue of whether Mrs. Madill was under the influence of or affected by intoxicating liquor; that the instruction is therefore prejudicial and the plaintiffs have been denied a fair trial.

The evidence on this issue is not in dispute except from inferences which may be drawn from the conflicting testimony as to the manner of the operation of the car by Mrs. Madill at the time of the collision.

About 4 o'clock in the afternoon before the accident, Mrs. Madill went to Mrs. Mueller's house in Yakima. They were together for 1 hour. There was beer in the icebox. Mrs. Madill was recovering from an operation at the time and she was restless. They decided to take an automobile ride and they notified Mrs. Madill's husband, who would be at work until 11 o'clock that night. They left in the Madill car with Mrs. Madill driving. Mrs. Mueller was a passenger in the front seat. On their way out of Yakima,

Mrs. Madill realized she had no money and stopped at a market to cash a check. In order to have a reason for cashing a check, she purchased six bottles of beer and placed them in the back seat. They proceeded on the White Pass Highway until they arrived at Naches, where Mrs. Madill purchased some gas and Mrs. Mueller purchased some ice and a pail into which she put the beer and ice. They then continued on until they arrived at Packwood where they stopped at a restaurant for dinner, which was approximately 67 miles from the scene of the accident. The restaurant was out of food so they each drank one bottle or glass of beer. They continued to Mossyrock and made inquiry for the location of a restaurant. They were advised to continue to the turnoff at the White Pass overpass which crosses Highway 99 at right angles. Upon reaching Highway 99, Mrs. Madill inadvertently drove over the overpass before she realized that she had missed the turnoff. She turned around, drove back; and turned left onto the east approach road to Highway 99 and proceeded north to where the collision occurred. A patrolman at the scene of the accident testified there were five unbroken bottles of beer and one can of beer in the car. An independent witness testified he detected a fairly strong odor of alcohol on the breath of Mrs. Mueller. Dr. Ronald Maddox, who rendered medical attention to Mrs. Madill for about three hours shortly after the collision, testified he did not detect the odor of intoxicating liquor on Mrs. Madill's breath. The defendant introduced testimony of Dr. Frances J. Ditter, Mrs. Madill's doctor in Yakima, that she was in the habit of drinking too much beer.

From the above testimony the defendant's counsel argues there was a discrepancy between the amount of beer found in the car at the accident scene and the amount testified to by Mrs. Madill; that it was reasonable to conclude the ladies purchased an additional six cans of beer and had consumed all but the contents in one can; that in view of the drinking habits of Mrs. Madill, it is reasonable to conclude that Mrs. Madill drank some of the beer placed in the iced bucket during the journey that afternoon; and that

her confusion in missing the White Pass turnoff and swerving in front of the truck indicated she was under the influence of or affected by intoxicating liquor.

The plaintiffs' counsel, on the other hand, contends that the conclusions of defendant's counsel are based on speculation and, in view of Dr. Maddox's testimony that he detected no odor of alcohol on Mrs. Madill's breath, there is an absence of any evidence that she was under the influence of or affected by intoxicating liquor at the time of the accident. We agree with plaintiffs' counsel.

In *White v. Peters,* 52 Wn. (2d) 824, 329 P. (2d) 471 (1958), the driver of the car had "one cocktail at lunch," "one whisky highball" at dinner, and the accident happened at approximately 6:30 p.m. We said:

"There is no evidence in this case that plaintiff White was affected in any way by the two drinks, and no evidence of conduct or appearance, from which a fair inference could be drawn, that he was under the influence of intoxicating liquor prior to or at the time of the accident.

"It is prejudicial error for the trial court to submit an issue to the jury when there is no substantial evidence concerning it. *Leavitt v. DeYoung,* 43 Wn. (2d) 701, 707, 263 P. (2d) 592 (1953), and cases cited. Hence, it was error for the trial court to give instruction No. 16, which permitted the jury to consider plaintiff White's sobriety, and to give that portion of instruction No. 17, which permitted the jury to consider whether Mr. and Mrs. Buster, as passengers in Mr. White's car knew or should have known that Mr. White was under the influence of or affected by intoxicating liquors.

"This conclusion is supported by our decisions in *Schalow v. Oakley,* 18 Wn. (2d) 347, 139 P. (2d) 296 (1943), and *Wood v. Myers,* 48 Wn. (2d) 746, 296 P. (2d) 525 (1956)."

To say from the record in this case that Mrs. Madill had more than one bottle of beer is conceivable; however, we do not know this as a fact from the evidence, and such a conclusion would be based on mere speculation. There is a complete absence of any evidence that she was under the influence of or affected by intoxicating liquor at the time of the accident.

We are mindful of counsel's argument that Mrs. Madill missed the White Pass turnoff and that, according to the truck driver's testimony, she turned sharply in front of the truck and reduced her speed. It is also conceivable that a sober person would be subject to such conduct by inadvertence, misjudgment, or negligence. Therefore, it cannot be said that her conduct was evidence of intoxication.

Instruction No. 19 permitted the jury to speculate on the issue of whether Mrs. Madill was under the influence of or affected by intoxicating liquor, a fact which is not supported by substantial evidence in the case. *Leavitt v. DeYoung,* 43 Wn. (2d) 701, 263 P. (2d) 592 (1953). A new trial should have been granted by the trial court.

The plaintiffs made further assignments of error which we will consider for the guidance of the trial court and counsel at the new trial.

The Madills assign error to the trial court giving instructions Nos. 5 and 6 on contributory negligence. They contend there is no room for contributory negligence under the diametrically opposite versions as to the manner in which the accident occurred. We do not agree. We believe the jury could conclude that the defendant's driver was not as attentive as he should have been, and that Mrs. Madill either negligently swerved in front of the truck, in one version of the testimony, or she failed to exercise reasonable caution in warning the truck driver of her intention to make a right turn, in the other version of the testimony.

The Madills further assign error to the failure of the trial court to give proposed instruction No. 5. It provided that oral testimony, even if undisputed, must yield to the undisputed physical facts and conditions with which the oral testimony is not reconcilable. The truck driver testified that he first saw the Madill car following him when he was 200 to 300 yards north of the White Pass overpass, and that it was traveling 5 to 10 miles per hour faster than his truck. The plaintiff's expert witness concluded, according to mathematical calculation, that the accident could not have occurred where it did if the facts as recited by the truck driver are true. The plaintiffs testified that they did not

enter Highway 99 until arriving at its junction with the east access road 1,775 feet north of the overpass.

■ The "physical facts rule" discussed in *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848 (1919), and recently in *Bennett v. McCready,* 57 Wn. (2d) 317, 356 P. (2d) 712 (1960), may not be invoked with respect to speed, position, etc., where it is necessary to make estimates or start with an assumption of the existence of the facts relating to speed, position, etc., *Crocker v. Johnston,* 43 N. M. 469, 95 P. (2d) 214 (1939); *Hopfer v. Staudt,* 207 Ore. 487, 298 P. (2d) 186 (1956). In *Mosso v. E. H. Stanton Co.,* 75 Wash. 220, 134 Pac. 941 (1913), we said:

"The vice of this argument is in the assumption that the speed of both man and machine as testified to were indisputably established physical facts, whereas they were mere estimates. Either one or both of these estimates may have been incorrect. Mere estimates, given as such, can hardly discredit positive testimony to the point of incredibility, as a matter of law. . . ."

The trial court did not err in refusing to give the requested instruction.

The Madills assign error to the trial court giving instruction No. 13, on the law relating to signaling for right or left turns, on the ground there was no evidence in the record to indicate that Mrs. Madill had commenced to make a right turn. We disagree. The jury could have concluded she in fact had commenced the turn.

Lloyd Smith, an independent witness, testified in reference to the Madill car:

"Well, it seemed to be as though it was pulling into the intersection to the right, and it seemed to be the front end just a little off the road, off the blacktop."

The Madills further assign error to the failure of the court to give their proposed instructions Nos. 7, 11 and 13, on the duty of the driver of the following car to keep a proper lookout ahead and to keep the following car under control. They contend the instructions were necessary for their argument to the jury on the presentation of their theory of the case.

We have examined the instructions given by the trial court on the duties of a following driver and are satisfied they permitted the plaintiffs to argue their theory of the case without limitation.

The Madills finally assign error to the failure of the court to give their proposed instruction No. 14, on the issue of wanton negligence of the defendant truck driver. We find nothing in the record indicating wilful or wanton conduct by the defendant driver, and such an instruction would therefore be improper. *Enyeart v. Borgeson,* 60 Wn. (2d) 494, 374 P. (2d) 543 (1962).

■ Plaintiff Mueller contends that in the event a new trial is granted, her case should be retried on the issue of damages alone; that it is inherent in the verdict that the truck driver was negligent since the jury found against the defendant on its cross-complaint and no appeal was taken. Hence, it is res judicata. The doctrine is not intended to apply to a situation such as this. In *Greenwood v. Olympic, Inc.,* 51 Wn. (2d) 18, 315 P. (2d) 295 (1957), we said:

"We have on numerous occasions recognized that a new trial may be, and under proper circumstances should be, limited to the amount of damages only; but our cases have been entirely consistent with the general rule that the right to limit the issues, when ordering a new trial, should be exercised only when 'justice does not require the resubmission of the whole case to the jury.' *Nelson v. Fairfield* (1952), 40 Wn. (2d) 496, 501, 244 P. (2d) 244.

"It is generally held that it is only where liability is clearly shown that the issue of damages alone can be tried out without injustice to either party. *Lundblad v. Erickson* (1930), 180 Minn. 185, 230 N. W. 473.

"Where the inadequacy of damages is coupled with a very close case on the issue of liability, justice, for obvious reasons, requires a new trial upon the entire case. . . ."

We do not consider the liability so clear as not to justify its consideration by the jury at the retrial.

The judgment of the trial court upon the jury verdict for the defendant, dismissing plaintiffs Madill and plaintiff

Mueller, is reversed, and the consolidated cases are remanded for a new trial on all issues.

Costs will abide the final determination of the causes.

DONWORTH, FINLEY, WEAVER, ROSELLINI, HAMILTON, and HALE, JJ., concur.

HILL, J. (dissenting)—The majority says that the crucial issue is whether or not instruction No. 19 should have been given. That instruction was as follows:

"If you find that the plaintiff, Mabel Mueller, voluntarily rode in a car driven by one who was under the influence of or affected by intoxicating liquor after plaintiff, Mabel Mueller, knew, or in the exercise of reasonable care should have known, the driver's condition, and if you find that a person exercising reasonable care would not have done so and plaintiff suffered injury as a proximate result of the condition of the driver, you will find the plaintiff, Mabel Mueller, guilty of contributory negligence."

Jurors are not required to reason in the rarefied judicial atmosphere of pure logic. They, apparently, are taking a dim view of the situation when women, out for an afternoon of drinking and driving, get involved in collisions. See *Shaw v. Browning* (1961), 59 Wn. (2d) 133, 367 P. (2d) 17.

Of course, no one testified that the women involved in this case were out for an afternoon of drinking along with their driving; however, a jury might infer that beer was purchased for the purpose of drinking, even though the testimony was that it had been purchased for the purpose of cashing a check. A jury might also infer that, since a bucket and ice were acquired by the women to cool the beer, they drank the beer thus cooled on that hot afternoon. There may have been other reasons for cooling the beer, but no one has suggested what they were.

The legislature has said that,

"It is unlawful for any person who is under the influence of or affected by the use of intoxicating liquor . . . to drive or be in actual physical control of any vehicle upon the public highways." RCW 46.56.010

My position, that there is a distinction between intoxication and being "under the influence of or affected by the use of intoxicating liquor," is based upon our analysis of the quoted phrase in *State v. Hurd* (1940), 5 Wn. (2d) 308, 316, 105 P. (2d) 59. We there said:

"We are therefore of the opinion, and now hold, that the phrases 'under the influence of' and 'affected by,' as employed in the statute, have the same significance, import, and breadth of meaning."[1]

To justify this holding, we there pointed out that "under the influence of intoxicating liquor" has been defined as any influence which lessens in any appreciable degree the ability of the driver to handle his automobile and the lessening, in the slightest or any degree, of his ability to operate a vehicle. In *Schalow v. Oakley* (1943), 18 Wn. (2d) 347, 357, 139 P. (2d) 296, we said:

"*State v. Hurd* is cited to show that, in construing a criminal statute, this court held that the phrases 'affected by the use of intoxicating liquor' and 'under the influence of intoxicating liquor' mean the same thing, and that the offense is made out, if it be proven that, on account of the use of intoxicating liquor, the accused's ability to operate a motor vehicle was lessened in the slightest degree."

It seems to me that intoxication implies something more than the lessening, in the slightest degree, of the ability to operate a vehicle. This could involve nothing more than the slowing of reaction time by a fifth of a second. However, I do not base this dissent on semantics.

The trial court used the language of the statute in the

[1] Laws of 1927, chapter 309, § 51, p. 811, made it unlawful ". . . to operate a motor vehicle upon the highways of this state while under the influence of intoxicating liquor . . ."

Laws of 1937, chapter 189, § 119, p. 910, made it unlawful ". . . to operate any vehicle upon the public highways of this state while under the influence of *or affected by the use of* intoxicating liquor . . ." (Italics mine.)

Contrary to our usual rule of giving meaning to added words, we have held, as indicated above, that the two phrases mean the same thing.

The change made in 1937 continues through the latest enactment in 1961.

instruction, which the majority finds to be erroneous. To so hold, the majority must find that there was no question for the jury on whether Mrs. Madill was "under the influence of or affected by the use of intoxicating liquor," and whether, if she was, Mabel Mueller should have known it. That Mrs. Madill had consumed some intoxicating liquor is conceded. The majority make some point of the fact that the conceded drinking was 67 miles from the point of the collision. The effects of the alcohol would be measured in time, not miles. Mrs. Madill testified that she was driving about 55 miles an hour, but sometimes reached 60; and this would put the conceded ingestion of the alcoholic beverage an hour and a quarter before the collision. Whether Mrs. Madill had used enough of the beer to be under its influence or affected by it, and whether, if she was so influenced or affected by it, Mrs. Mueller should have known it, seem to me to be jury questions. Consequently, I dissent from the holding that it was error to give instruction No. 19 and would affirm the judgment.

OTT, C. J., concurs with HILL, J.

---

September 16, 1964. Petition for rehearing denied.