[No. 37512. En Banc. April 21, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. ALLEN DAWN UGLEM, *Appellant.**

*Chavelle, Chavelle & Greenway,* for appellant.

*Charles O. Carroll* and *David W. Soukup,* for respondent.

FINLEY, J.—The defendant was charged, tried, and convicted of the crime of negligent homicide—the weapon was a highpowered sportscar. The defendant is appealing his conviction by a jury. He contends that the evidence was insufficient to prove the crucial requirements of the crime.

*Reported in 413 P.2d 643.

Furthermore, he contends that the case should never have been sent to the jury.

At this point, the following brief resume of the facts will be helpful. The defendant was the driver of a 1962 Corvette sportscar. He was driving east on 252nd in South King County shortly after 1 a.m., early Sunday morning, June 23, 1963. Two Hundred Fifty-second Street intersects with the "Old Highway 99" which runs between Seattle and Tacoma.

Just before the accident, a Mr. Melvin H. Jangard was driving his 1962 Corvair on the "Old Highway. 99," with Nancy A. Warren as a passenger in the car. They were headed south in the curb lane, returning to Tacoma after an evening in Seattle.

The defendant entered the intersection at a high rate of speed and hit the Jangard vehicle broadside. The defendant's car came to rest 31 feet beyond the point of impact, and the Jangard vehicle was propelled all the way across the four-lane highway, some 75 feet to the opposite shoulder, where it came to rest on its side. When the state trooper arrived at the scene, Mr. Jangard was still in the car and was seriously injured; Miss Warren was lying, dead, on top of him. The defendant was in a coma for five days, and his two passengers were also seriously injured.

The trial judge concluded that the state had presented sufficient evidence to allow the jury to decide whether the defendant had violated RCW 46.56.040. He instructed the jury as follows:

> To convict the defendant, Allen Dawn Uglem, of NEG-LIGENT HOMICIDE, as charged in the Information herein, the State must prove to you beyond a reasonable doubt:
>
> (1) That on or about the 23rd day of June, 1963, the defendant did operate a motor vehicle upon a public highway in King County, Washington;
>
> (2) That the defendant operated said motor vehicle either

(a) in a reckless manner,

Or

(b) with disregard for the safety of others,

Or

(c) while under the influence of or affected by the use of intoxicating liquor; and

(3) That as a proximate result of said operation of an automobile, Nancy A. Warren died within one year.

We note that the defendant has not argued that the evidence was insufficient to allow the jury to determine whether the defendant drove his car "with disregard for the safety of others." However, the defendant argues that there was insufficient evidence on the issues of reckless driving and driving while under the influence of liquor for the jury to consider those facets or elements of the instructions or charge given by the trial judge to the jury.

First, the defendant contends that the evidence was insufficient to show that he was under the influence of liquor at the time of the accident. The defendant points out that all the witnesses called by the state testified that they thought the defendant was sober at the time of the accident. Also, the defendant stresses the fact that the state trooper who was called to the accident did not testify that he smelled liquor on the defendant.

The state strongly contests the contention of the defendant that the evidence was insufficient to support the charge that the defendant was under the influence of liquor at the time of the collision. The state attempted to use a blood test made possible by a sample of blood taken from the defendant when he was admitted to the hospital. The results of the blood test were excluded by the trial judge. This was a significant victory for the defendant. Consequently, on this appeal he has made no issue about this aspect of the case.

The state contends that even without the blood test there was more than sufficient evidence that the defendant was under the influence of alcohol at the time of the accident. The state utilized the statement of the defendant and the testimony of his friends to reconstruct the activities of the

defendant before the accident. In a statement given to Trooper Hall the defendant said that shortly after noon on June 22, 1963, he had gone to the Fireside Inn, a tavern located on the "Old Tacoma Highway." He had a beer there and left. He then went to Tacoma and visited the White Spot Tavern. There, he may have had two beers before he left. He had some recollection of returning to the Fireside Inn, but he did not remember anything after that until he awoke in the hospital. He did not know he had been involved in an accident until his father told him about it in the hospital.

James Whitcomb, a friend of the defendant, testified that he saw the defendant at the Fireside Inn at about 2:30 p.m.; that defendant drank one beer and left; that he saw him again at the Fireside Inn at about 6 p.m.; that defendant came in and played a game of shuffleboard, and "during this he drank one and maybe two beers." Again, the defendant left the tavern, and again he later returned to the tavern at 11 or 11:30 p.m. When the tavern was about to be closed shortly before midnight, the defendant left for an after-hours party at a private home with Whitcomb, taking half a case of beer with him. Whitcomb testified that they arrived at the party at about 20 minutes before 1 a.m. Whitcomb stated that he, the defendant, and one Don Cella (later a passenger in the defendant's car) sat and had one beer. They left the party shortly after 1 a.m. The collision occurred immediately thereafter. The state trooper found five full bottles of beer, several broken bottles, and one empty bottle in the defendant's car after the collision.

On the basis of the foregoing, we are convinced that the jury properly could have believed and concluded that the defendant had consumed at least seven beers in the 12 hours he spent in and out of taverns immediately preceding the accident. The jury could have made that tally simply by counting the number of beers the defendant admitted he drank, and then adding the number of beers his friends testified that he consumed. In fact, the jury might well have regarded the estimate of seven beers as conservative when they considered the facts that the testimony about the de-

fendant's drinking came from his friends who themselves had been drinking since early in the day. We also note that the defendant offered no testimony to show that he was elsewhere than at a tavern during the 12 hours before the collision; nor did he offer any proof that he had consumed any food during that period.

The defendant, as stated above, argues that the evidence was not sufficient to send the issue of intoxication to the jury. He relies on a number of cases which he contends support his view. *Madill v. Los Angeles Seattle Motor Express Inc.*, 64 Wn.2d 548, 392 P.2d 821 (1964); *White v. Peters*, 52 Wn.2d 824, 329 P.2d 471 (1958); *Wood v. Myers*, 48 Wn.2d 746, 296 P.2d 525 (1956); *Schalow v. Oakley*, 18 Wn.2d 347, 139 P.2d 296 (1943).

■ Before discussing the above cases, we shall risk elaborating the obvious by mentioning that each case largely turns or depends on its own facts as to any claim that the evidence was not sufficient for the case to have gone to the jury. The legal rules are clearly stated in *State v. Reynolds*, 51 Wn.2d 830, 833, 322 P.2d 356 (1958):

> " 'A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the evidence of the party against whom the challenge or motion is made and all inferences that reasonably can be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or movant party and in the light most favorable to the opposing party. . . .' " (Quoting from *State v. Lutes*, 38 Wn.2d 475, 481, 230 P.2d 786, (1951).)

*State v. Reynolds* also held:

> Whether the evidence is sufficient to submit the issue to the jury is a question of law for the court, and no element of discretion is involved. . . . Where there is any evidence, however slight, and the evidence is conflicting or is such that reasonable minds may draw different conclusions therefrom, the question is for the jury. (p. 834.)

Turning to the cases cited by the defendant, we find that all are distinguishable on their facts. In *Madill v. Los Angeles Seattle Motor Express, Inc., supra,* it was held to

be error to instruct that the plaintiff could be guilty of contributory negligence because she rode in a car where the driver was under the influence of liquor. The court held there was insufficient evidence on which to allow the jury to consider the intoxication of the driver because under the evidence in the case it would be "mere speculation" to say that the driver had more than one bottle of beer. In the instant case there is considerably more evidence of drinking than a "one beer" situation.

In *White v. Peters, supra,* the driver had one cocktail with his lunch at noon. Then he went "window shopping" with his wife and returned to the lounge of the lodge hall, where he slept until about 4 p.m. They then had a large banquet-style dinner and one whisky highball. The accident occurred 2½ hours later. The court held it was error to submit the issue of contributory negligence—*i.e.,* driving under the influence of liquor—to the jury under these facts. In the case at bar there is no evidence that the drinking was limited to two drinks or that the defendant ate while or after drinking.

In *Wood v. Myers, supra,* the driver had two beers after lunch, one beer about 11 p.m., and he split a "jumbo" of beer with a friend shortly before the accident at 3 a.m. In addition to lunch, the driver had eaten a complete wedding dinner and also a sandwich about midnight. Seattle Police Captain Corning also testified that, based on the above facts, the plaintiff could not have been under the influence of intoxicants at the time of the accident. The court held that the trial court properly refused to instruct the jury on the issue of whether the plaintiff was under the influence of intoxicants. Again, the extensive evidence as to the plaintiff's activities in *Wood v. Myers* respecting the activities of the wedding day and his food consumption are in striking contrast to the present case.

The last case cited by defendant herein is *Schalow v. Oakley, supra.* There, the court upheld the refusal of the trial court to allow the jury in a damage action to consider the intoxication of the defendant where the evidence showed that the driver had a pint of beer at 10 a.m., 1 or

1½ pints with his lunch, and a "stubby" of beer at about 2:30. The defendant there had nothing more to drink prior to the accident which happened some 7 hours later. In the instant case the testimony shows that the defendant was still drinking shortly before the collision.

Since all of the cases cited by defendant are distinguishable on their facts, we do not think they are controlling when we apply the rules of *State v. Reynolds, supra*. We believe there was sufficient evidence to send the issue to the jury. The state cites the following cases to support this conclusion. *Hannaford v. Hornby,* 53 Wn.2d 565, 335 P.2d 473 (1959); *Crown v. Miller,* 199 Wash. 354, 91 P.2d 713 (1939); *Burget v. Saginaw Logging Co.,* 197 Wash. 318, 85 P.2d 271 (1938); *Garcia v. Moran,* 194 Wash. 328, 77 P.2d 988 (1938).

The defendant next asserts that there was insufficient evidence to send the issue of reckless driving to the jury. Again the defendant relies on the testimony of his friends who were called by the prosecution. They testified that they did not notice anything unusual about the defendant's driving just before the accident. The defendant also relies on the fact that there were no eye witnesses to the accident. (All of the survivors are unable to remember what happened.) The defendant argues that this lack of evidence means that there was insufficient evidence on which to send the issue to the jury.

However, it is difficult to believe that the defendant seriously relies on this ground for reversal when consideration is accorded to the evidence adduced by the state. The defendant was driving east on 252nd Street in a 25 m.p.h. speed zone. There is a stop sign on 252nd at the intersection with the highway. A block and a half before the fatal intersection, the defendant was observed by a witness, Robert Long. The witness was visiting a friend. They were sitting in the front room listening to music over the stereo, talking and looking out the picture window. The witness gave the following testimony:

A We heard a car shift down or shift up and it sounded like a Corvette, and then we saw it come up past the house

going towards the highway. Q You say it sounded like a Corvette. How could you determine this? A I just know what a Corvette sounds like. They all sound about the same. Q Have you had much experience with vehicles? A Well, I work as a parttime mechanic in a wrecking yard. Q Do you follow the races? A Yes. . . . Q Were there any other vehicles in the area at that time? A Not at the time, no. Q Do you know what type of Corvette it was? A I know. It was a black '62. Q From your observation, can you give a reasonably accurate estimate as to how fast it was going? A Well, I mean I can't judge the exact speed it was doing, but it was doing over 25. It seemed like maybe twice that much, but I couldn't be sure.

The jury was also presented with photographs of the demolished cars, taken shortly after the collision. These pictures vividly portray the magnitude of the impact. The jury also could consider the fact that the defendant's car continued 31 feet nearly straight ahead after the impact, ending up on a traffic island, after hitting the Jangard vehicle broadside. The jury also could have considered the speed and force necessary to knock the Jangard vehicle 75 feet out of its path of travel by right angles, leaving it on its side on the opposite side of a 4-lane highway, divided by concrete traffic islands. Thus, viewing all of the evidence adduced as true, and according to it the favorable inferences required by the rules, it is possible to conclude that the defendant was accelerating rapidly on 252nd Street, and that he crashed into Highway 99, one of the busiest highways in the state, totally ignoring the stop sign and traveling at a speed of 50, 60, or possibly more, miles per hour. It certainly was not improper to let the jury determine whether this was reckless driving within the prohibition of RCW 46.56.040.

The judgment of conviction should be affirmed. It is so ordered.

HILL, DONWORTH, OTT, HUNTER, and HAMILTON, JJ., concur.

ROSELLINI, C. J. (dissenting)—The majority opinion contains a complete, carefully considered recitation of the pertinent facts. There is no need to restate them.

The defendant's challenge to the sufficiency of the evidence admits the truth of the state's evidence and all inferences that reasonably can be drawn therefrom. Furthermore, it requires that the evidence be interpreted most strongly against the defendant and in a light most favorable to the state. *State v. Reynolds,* 51 Wn.2d 830, 833, 322 P.2d 356 (1958). However, the foregoing test *does not invite speculation.* It only authorizes the *reasonable drawing of inferences.*

An *inference* is a process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence *from other facts already proved or admitted. Fannin v. Roe,* 62 Wn.2d 239, 242, 382 P.2d 264 (1963); *Peterson v. Betts,* 24 Wn.2d 376, 393, 165 P.2d 95 (1946); *Barnes v. J. C. Penney Co.,* 190 Wash. 633, 644, 70 P.2d 311 (1937). On the other hand, *speculation* is no more than guesswork or conjecture. Webster's New World Dictionary of the American Language, (College ed. 1959). It is a mental process by which one reaches a conclusion as to the existence of an essential fact by *theorizing either on incomplete evidence* or on *assumed factual premises* that are outside of and beyond the actual scope of the evidence. *Brawley v. Esterly,* 267 S.W.2d 655, 659 (Mo. 1954).

In the light of the foregoing test, the majority opinion correctly concluded that there was sufficient evidence for the jury to have found that the defendant violated RCW 46.56.040 by driving his automobile "in a reckless manner." However, the jury also was permitted to determine whether he had violated the statute by driving his automobile "while under the influence of or affected by the use of intoxicating liquor."

I have no illusions that the defendant is innocent of negligent homicide insofar as the charge is based on "reckless driving." But unfortunately, evidence of his being "under the influence of intoxicating liquor" was not suffi-

cient to submit that specific issue to the jury. There was nothing from which the jury could have reasonably drawn an inference that he was so affected. Thus, I must disagree with the conclusion that the question was properly submitted to the jury.

The manner in which beer was sprinkled throughout the case unquestionably supports a conclusion that the defendant had consumed intoxicating liquor. However, he was not accused of having committed negligent homicide by driving an automobile after the *consumption* of intoxicating liquor. He was specifically charged with having committed negligent homicide by driving his automobile "while under the *influence* of or *affected* by" the liquor he drank. The vital issue is not whether the defendant had, or had not, *consumed* any particular quantity of intoxicating liquor. The issue here is whether, at the time of the accident, he was *under the influence of* the amount of intoxicating liquor which he had consumed. *State v. Hurd,* 5 Wn.2d 308, 316, 105 P.2d 59 (1940).

This issue may be established by circumstantial evidence but the circumstances must themselves be proved and not assumed. *State v. Donckers,* 200 Wash. 45, 93 P.2d 355 (1939). One may not fill weaknesses or gaps in the proof by suspicion, speculation or surmise. *State v. Hiser,* 51 Wn.2d 282, 317 P.2d 1072 (1957). Furthermore, the facts and circumstances in evidence must be consistent with each other and inconsistent with any reasonable theory of the defendant's innocence. *State v. Mickens,* 61 Wn.2d 83, 377 P.2d 240 (1962).

Of course, whether the circumstantial evidence excludes every reasonable hypothesis other than the defendant's guilt is a question for the trier of fact. *State v. Courville,* 63 Wn.2d 498, 387 P.2d 938 (1963). Also, there inheres in the jury's verdict of guilty a finding that the circumstances proved were consistent with the guilt of the accused and inconsistent with his innocence. *State v. Long,* 44 Wn.2d 255, 266 P.2d 797 (1954). Nevertheless, the appellate court still must determine whether there is substantial evidence tending to establish circumstances on which such a finding

can be predicated. *State v. Long, supra.* At best the record supports a conclusion that the defendant drank a total of seven beers prior to the fatal accident. Nevertheless, this fact does not exist in a vacuum. Although he may have partaken of seven beers, his drinking occurred over an extended period of 12 or 13 hours (12 noon Saturday to approximately 1 a.m. Sunday). Furthermore, six of the seven beers were consumed prior to approximately 6 p.m. Saturday. *The seventh beer was consumed at about 1 a.m., after an interval of approximately seven hours.* This, standing alone, is insufficient to establish that the defendant was under the influence of or affected by the use of intoxicating liquor at the time of the accident.

Nor does the added fact that the defendant had beer available during the considerable time he spent at two taverns, and at a party, support an inference that he consumed any particular quantity. It neither supports an inference that he consumed more than acknowledged by witnesses nor an inference that he was under the influence of the quantity consumed. *Donaldson v. Donaldson,* 38 Wn.2d 748, 754, 231 P.2d 607, 25 A.L.R.2d 919 (1951). The most that is established is a mere *opportunity* to imbibe to excess.

The opportunity to do an act may be shown as a link in proving circumstantially that an accused committed the act. *People v. Cooper,* 81 Cal. App. 2d 110, 183 P.2d 67 (1947); 23 C.J.S. *Criminal Law* § 907, p. 556; 20 Am. Jur. *Evidence* § 246. However, opportunity standing alone does not rise to the dignity of proof that an accused actually committed the act. *State v. Coffey,* 228 N. C. 119, 44 S.E.2d 886 (1947); 23 C.J.S. *Criminal Law* § 907, p. 556 note 86. It is merely one circumstance which, coupled with others, *might* be sufficient. Standing alone it means nothing. *State v. Skinner,* 132 Conn. 163, 43 A.2d 76 (1945). The opportunity to commit a crime is not a substitute for proof of the commission of a crime. *Lair v. State,* 316 P.2d 225, 71 A.L.R. 2d 856 (Okla. Crim. 1957). Nor is a showing of mere opportunity to commit a crime sufficient to justify a verdict of guilty. *People v. Cooper, supra; Baker v. State,* 236 Ind.

55, 138 N.E.2d 641 (1956). See, also, *Commonwealth v. Curtis,* 318 Mass. 584, 63 N.E.2d 341 (1945); *Lang v. State,* 252 Ala. 640, 42 So. 2d 512 (1949); *Thomas v. State,* 148 Tex. Crim. 526, 189 S.W.2d 621 (1945); 23 C.J.S. *Criminal Law* § 907, p. 556 note 86.

Before one may be deprived of his freedom, the law must surely exact something more than the mere *opportunity* to have been affected by intoxicating liquor. If a prolonged visit in a tavern, coupled with mere *opportunity* to imbibe to excess, is now considered sufficient proof that one is affected by the liquor he drank, then the liberty of many innocent people may be easily sacrificed in the future.

Aside from the mere opportunity to drink to excess, there is no inference that can be reasonably drawn that the defendant was in fact under the influence of intoxicating liquor. The odor of liquor on the breath of an accused is recognized as one link in the chain to establish circumstantially that he was under the influence of intoxicants. *State v. Boesseau,* 168 Wash. 669, 13 P.2d 53 (1932). But, in the instant case, no witness testified that he smelled such an odor. Even the state trooper, who was at the scene of the accident, did not so testify. Undoubtedly, he was too busy tending the injured. Nevertheless, the logic of the explanation does not shift the state's burden of proving the defendant's state of sobriety. The fact that proof is difficult to get or is logically overlooked does not change or shift the burden of proof. *United States v. Morley,* 99 F.2d 683 (7th Cir. 1938).

One's manner of speech or his personal conduct at or about the time of an accident is another method of supplying a necessary link in the chain of circumstantial evidence. *State v. Forsyth,* 131 Wash. 611, 230 Pac. 821 (1924). In this case, however, the defendant's speech was not discussed and all the state's witnesses appeared to agree that the defendant was sober at the time in question.

Proof that one drove erratically is recognized as another possible link in the chain of evidence to establish circumstantially that an accused was affected by intoxicants. *State*

*v. Dalton,* 158 Wash. 144, 290 Pac. 989 (1930). But those who testified about the defendant's driving contended that they observed nothing unusual.

Without question, there was evidence of speed in excess of the lawful limit. Such speed was sufficient to establish "reckless driving." RCW 46.48.026. This in turn was sufficient to support the charge of negligent homicide based upon "reckless driving." RCW 46.56.040. But it does not support an inference that the defendant was also under the influence of intoxicating liquor. Sober men frequently commit the same violation.

Granted, *all* testimony concerning the defendant's drinking, driving and sobriety was elicited from his friends who themselves had been drinking. Nevertheless, this was the *only* evidence on the subject. If submitted, the jury would have had a right to accept or reject it. If the evidence was believed, the jury would have been required to find that the accused was not under the influence of intoxicants. On the other hand, if the jury rejected the testimony, the defendant's statement to the state trooper would have become the only remaining evidence on the subject of drinking. The statement merely established that he had consumed three beers, the last of which was consumed at about 2:30 p.m., Saturday afternoon (approximately 10½ hours prior to the accident). Clearly such evidence would have been insufficient to support a finding that the defendant was affected by intoxicating liquor at the time of the accident. *State v. Hurd, supra; Cameron v. Boone,* 62 Wn.2d 420, 425, 383 P.2d 277 (1963). Under either alternative, it would have been necessary for the jury to resolve the issue in the defendant's favor. Thus, there was no disputed fact to submit to the jury on the subject of intoxication.

A third alternative is suggested by the majority opinion. It is indicated that the jury could have discounted the testimony of the defendant's friends and decided that their estimate of consumed liquor was "conservative." Without question, such a conclusion could have supported a finding that the defendant had consumed *no less beer* than appeared

in the record. But it would not have supported a finding that the defendant consumed *more* than appeared in the record, or that it was consumed at different times or places. Such a conclusion could not have been established by logical deduction from other facts already proved or admitted. It could have been based only upon pure speculation. Hiatus in proof cannot be filled by suspicion, speculation or surmise. *State v. Hiser,* 51 Wn.2d 282, 317 P.2d 1072.

In an effort to support its contention that the defendant was under the influence of intoxicants, the state asserts that the defendant failed to establish that he consumed any food during the time he drank the beer in question. On the other hand, there is also no proof that he failed to eat. For lack of proof the pendulum hangs at dead center. It is basic law that the state must prove its case beyond a reasonable doubt. The defendant is under no obligation to disprove the charge against him. He has no obligation to testify and his silence is no substitute for proof by the state. *State v. Hiser, supra.* The state must establish its case based upon the strength of its own position, not upon the weakness of the defendant's case. *United States v. Morley, supra,* or upon the fact that some unfavorable circumstances are not satisfactorily explained. *State v. Bailey,* 286 S.W. 422 (Mo. App. 1926); *Reyes v. State,* 151 Neb. 636, 38 N.W.2d 539 (1949); 23 C.J.S. *Criminal Law* § 907, p. 558 note 1.

Finally, the trial judge excluded evidence of a blood sample taken from the defendant at the time he was admitted to the hospital. This was a matter of legal right, not a matter of good fortune or a whimsical gift. Thus, we must completely reject any hint that the blood sample might have had a high alcohol content by reason of the defendant's objection to the evidence. Although there is a temptation to use this circumstance to supply a missing link in the chain of circumstantial evidence, we must not give it even minuscule weight. If we yield, we have taken away a legal right; for we will be saying that the exercise of such a right justifies the jury in inferring guilt.

After reducing the facts to their bare essentials, one is forced to conclude that there was no evidence that, at the

time of the accident, the defendant was affected by the the quantity of intoxicants he had consumed. Nor was there any inference of such fact that could have been reasonably drawn from the evidence. A contrary conclusion requires speculation, surmise and conjecture.

It was improper to submit, by instruction, an issue that was unsupported by evidence in the record. *State v. Collins,* 66 Wn.2d 71, 76, 400 P.2d 793 (1965); *State v. Nelson,* 144 Wash. 370, 372, 258 Pac. 24 (1927). See, also *Reynolds v. Phare,* 58 Wn.2d 904, 365 P.2d 328 (1961).

The consequences of the accident were horrible. Unfortunately, adequate proof of the effect of defendant's liquor consumption was either unavailable or difficult to obtain. However, this fails to change the burden of proof. I am reluctantly compelled to dissent to that portion of the majority opinion which concludes that the liquor issue was properly submitted to the jury.

WEAVER and HALE, JJ., concur with ROSELLINI, C. J.