## Commonwealth *vs.* George Labadie
### (and a companion case[1]).

Worcester. October 8, 2013. - February 5, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Embezzlement. Credit Union. Bank. Larceny. Practice, Criminal,* Lesser
included offense. *Jurisdiction,* Superior Court, Federal preemption. *Superior
Court,* Jurisdiction. *Federal Preemption.*

This court concluded that the criminal defendants could not be convicted
under G. L. c. 266, § 52, of embezzlement of the funds of a credit union
that was "authorized by Federal law," where the credit union was not a
"bank" within the meaning of G. L. c. 167, § 1 [85-86]; however, this
court concluded that larceny by embezzlement under G. L. c. 266, § 30,
was a lesser included offense of bank embezzlement under § 52 and that
the jury by their verdicts found the defendants guilty of the lesser included
offense [86-88]; therefore, this court vacated the judgments of conviction
of bank embezzlement and remanded the matters to the Superior Court for
entry of judgments of conviction of the lesser included offense of larceny
by embezzlement and for resentencing on the lesser offense, where the
Superior Court had jurisdiction to try indictments alleging violations of
§ 52 [88-90], where principles of Federal preemption did not bar convic-
tion of larceny by embezzlement in circumstances in which the victim was
a Federal credit union and the embezzler was its employee [90-93], and
where the evidence at trial was sufficient to support a conviction of larceny
by embezzlement against each of the defendants [93-95].

Indictments found and returned in the Superior Court Depart-
ment on November 10, 2005, and December 5, 2006.

The cases were tried before *Peter W. Agnes, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Paul C. Brennan* for Susan Carcieri.

*Patricia A. DeJuneas* for George Labadie.

*Donna-Marie Haran,* Assistant District Attorney, for the
Commonwealth.

---

[1]Commonwealth *vs.* Susan Carcieri.

GANTS, J. The issue presented in this case, before the court on further appellate review, is whether an employee of a credit union "authorized by federal law" may be found guilty under G. L. c. 266, § 52 (§ 52), of embezzlement of the credit union's funds, and, if not, whether the employee may be found guilty of larceny by embezzlement, in violation of G. L. c. 266, § 30 (§ 30). Because the Commonwealth must prove beyond a reasonable doubt under § 52 that the victim was a "bank, as defined in [G. L. c. 167, § 1]," and because a Federal credit union is not a "bank" within this definition, we conclude that the defendants are entitled to judgments of acquittal as to this charge and vacate the convictions. We also conclude, however, that larceny by embezzlement, in violation of § 30, is a lesser included offense of embezzlement of a bank, in violation of § 52, and that Federal preemption doctrine does not bar State prosecution of a Federal credit union employee for larceny by embezzlement. Because the jury's verdicts demonstrate that they found the defendants guilty of all the required elements of larceny by embezzlement, we remand for entry of convictions of this lesser included offense and for resentencing.

*Background.* On August 27, 2002, defendant Susan Carcieri was employed part time as an assistant manager of the Wyman Gordon Federal Credit Union (credit union) in Worcester and lived with her husband, codefendant George Labadie, in a home across the street. A Superior Court jury concluded that Carcieri, aided and abetted by Labadie, embezzled credit union funds through the ruse of a fake robbery and convicted them of the indictments alleging violation of § 52.[2] Because the defendants challenge the sufficiency of the evidence, we summarize the evidence in the Commonwealth's case-in-chief and view that evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

As part of Carcieri's job as assistant manager, she typically

---

[2]The defendants also were charged with attempted possession of counterfeit notes, in violation of G. L. c. 267, § 12; and possession of counterfeiting tools, in violation of G. L. c. 267, § 13. George Labadie was found guilty of these charges; Carcieri was found not guilty. The Appeals Court affirmed Labadie's convictions of the counterfeiting charges. *Commonwealth* v. *Labadie*, 82 Mass. App. Ct. 263 (2012). Because the counterfeiting convictions were excluded from our grant of further appellate review, we do not address them.

would arrive at the credit union between 6:30 A.M. and 7:30 A.M. to prepare to open the credit union at 9 A.M. With the key she was given, she would enter in the morning through the back door; there were no bushes or comparable places for an intruder to hide in the area of the back door. She then would disarm the alarm, for which she had a code.[3] When she arrived on August 27, 2002, she knew that on the previous day the credit union had received a delivery of extra cash in anticipation of the expected demand for cash arising from the impending Labor Day weekend, end of the month paychecks, and employee bonuses. As a result, the credit union safe contained over $210,000 in cash that morning.

At approximately 7:49 A.M. on August 27, Carcieri telephoned 911 to report a robbery at the credit union. When Worcester police Sergeant Peter Towler arrived on the scene approximately six minutes later, he went to the back door of the credit union, which was closed. The door was opened by Carcieri, who was sitting in a chair with her feet and left hand tied to the chair and her right hand free to open the door. The cordage that bound her came from the "miniblinds" inside the credit union. Sergeant Towler observed that her left hand was "extremely loosely tied" to the chair. She did not appear to be injured or upset, there was no damage to her clothing, and she was wearing "a lot of jewelry." Carcieri told Sergeant Towler that a person came up to her from behind, and she could not see who it was. All she could describe of the assailant was that the person wore black boots; she was unable to describe the person's gender, race, or height. She said the intruder had left the bank approximately one hour before the police arrived, and that she was able to free her right arm from the binding on the chair right after the intruder had left.

Detective Dennis Cullina soon arrived on the scene and saw Carcieri when she was still loosely bound in the chair. He observed that the door to the safe was open, two cash boxes were empty, some cash was on the floor, and some coins and cash were inside the opened safe. Carcieri told him that when she arrived at work and went to open the door, someone took

---

[3]If one entered the numbers 911 at the beginning or end of the code, it would set off a silent alarm.

her from behind, brought her to where the chair was, put her in the chair, turned her around, and tied her. She did not recall if the intruder wore gloves. She said that the intruder put a paper towel in her mouth, which was found on the floor of the credit union. The detective asked Carcieri if she would come to the police station and give a statement as to what occurred, and she agreed.[4] Labadie was seen outside in his front yard using his cellular telephone after the police arrived and before Carcieri went to the police station, but he did not cross the street or approach the credit union to assess the situation or inquire about his wife. While Carcieri was in the police cruiser traveling to the police station, she received a telephone call from Labadie on her cellular telephone during which she spoke loudly and became very upset.

On August 29, the police executed a search warrant on the defendants' residence, and located over $25,000 in bundled, new one hundred dollar and ten dollar bills concealed in various locations; some of the bills were consecutively numbered. Four bundles of ten dollar bills wrapped in yellow bands were found in a twelve- by eighteen-inch hole that had been cut out of the wooden structure of the home and covered with loose vinyl siding that did not appear to be attached to the house. The packaging of the bills retrieved from the house was consistent with "the way [the credit union] receives money" from the Federal Reserve.

At around the time of the robbery, the defendants had a total combined balance of $7,252 in their personal and business bank accounts. They owed approximately $43,500 to the Lottery Commission, and had a debt of approximately $115,000 associated with a gasoline station they owned and operated. The day after the robbery, with cash stuffed under his shirt and in his pockets, Labadie walked into a check cashing store and purchased with cash nineteen $500 money orders, totaling $9,500. Labadie also purchased another $8,000 in money orders from other sources. Prior to the robbery, Labadie had discussed with a prospective business partner the purchase of new commercial donut-making equipment that cost approximately $50,000, but

---

[4]Her statement at the police station was not offered in evidence in the Commonwealth's case-in-chief.

stated that he did not have the funds to make the purchase at that time. However, after the robbery, this equipment was installed in the defendants' gasoline station and Labadie told the prospective partner that he had purchased the equipment, almost all of which was new.

The defendants appealed from their convictions to the Appeals Court, which reversed the bank embezzlement convictions under G. L. c. 266, § 52, as to both defendants, and remanded the case for retrial on the lesser included offense of larceny by embezzlement under G. L. c. 266, § 30. *Commonwealth* v. *Labadie*, 82 Mass. App. Ct. 263 (2012). We granted each of the defendants' and the Commonwealth's applications for further appellate review.

*Discussion. 1. Convictions under G. L. c. 266, § 52.* General Laws c. 266, § 52, provides in part:

> "An officer, director, trustee, agent or employee of a bank, as defined in [G. L. c. 167, § 1,] who fraudulently converts, or fraudulently takes and secretes with intent so to do, any . . . money . . . which belongs to and is in possession of such bank, or which belongs to any person and is deposited therein, shall, whether intrusted with the custody thereof or not, be guilty of larceny from said bank. . . ."

Therefore, to obtain a conviction under § 52, the Commonwealth must prove, as one of the required elements, that the defendant is either an officer, director, trustee, agent, or employee of a "bank," as defined in G. L. c. 167, § 1, or is aiding or abetting someone who is. A "bank," as defined in G. L. c. 167, § 1, is "any association or corporation chartered by the commonwealth under [G. L. c. 168, 170, 171, or 172,] or any individuals, association, partnership or corporation incorporated or doing a banking business in the commonwealth subject to the supervision of the commissioner [of banks]." If the evidence at trial was insufficient to prove that the credit union where Carcieri was employed at the time of the theft was a "bank," as so defined, the convictions of Carcieri and Labadie under § 52 must be vacated. The only evidence as to this issue was the name of the credit union (Wyman Gordon Federal Credit Union)

and testimony that the credit union was "a banking institution authorized by Federal law." There was no evidence that the credit union was chartered by the Commonwealth or that it was subject to the supervision of the Commissioner of Banks (commissioner), and therefore no evidence that it was a "bank" as defined in G. L. c. 167, § 1.[5]

While this failure of evidence alone is enough to doom the defendants' convictions under § 52, we note that G. L. c. 171, § 1, defines a "[f]ederal credit union" as "a credit union organized under the provisions of the Federal Credit Union Act," 12 U.S.C. §§ 1751 et seq. (2012), as distinguished from a "[c]redit union," which is defined as "a corporation organized under [c. 171]." This definitional difference reflects what the commissioner's general counsel has described as the "dual banking system," where "federally chartered financial institutions are chartered and regulated under [F]ederal law and standards," and "State chartered financial institutions are chartered and regulated under [S]tate law and standards," supervised by the commissioner. Accordingly, because Carcieri was not an employee of a "bank" as defined in G. L. c. 167, § 1, she could not be convicted of embezzlement from a "bank" under G. L. c. 266, § 52, and Labadie could not be convicted as an aider and abettor under this statute. We, therefore, agree with the Appeals Court that the defendants' convictions under this statute must be vacated.

2. *Lesser included offense of larceny by embezzlement under G. L. c. 266, § 30.* We next must consider whether larceny by embezzlement under G. L. c. 266, § 30, is a lesser included offense of bank embezzlement under § 52 and, if so, whether the jury by their verdicts also found the defendants guilty of the lesser included offense. "Under our long-standing rule derived from *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), a lesser included offense is one whose elements are a subset of the elements of the charged offense." *Commonwealth* v. *Porro*, 458 Mass. 526, 531 (2010). See *Commonwealth* v. *Ogden O.*,

[5]Because of the insufficiency of the evidence as to this required element, the judge erred both as a matter of fact and of law in telling the jury in his final instructions, "For the purpose of this charge, a credit union like the Wyman Gordon Credit Union is a bank."

448 Mass. 798, 808 (2007), quoting *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984) ("A crime is a lesser-included offense of another crime if each of its elements is also an element of the other crime"). We therefore examine the elements of bank embezzlement and larceny by embezzlement to determine whether the elements of the latter are a subset of the elements of the former.

At trial, the jury were instructed that the elements of bank embezzlement in violation of G. L. c. 266, § 52, are the following: "first, that the defendant, while in a position of trust or confidence as an employee of a bank, was entrusted with possession of personal property belonging to the bank or its customers; second, that the defendant took that property or hid it or converted it to her own use without the consent of the owner; and third, that the defendant did so with the intent to deprive the owner of the property permanently."[6]

The general larceny statute, G. L. c. 266, § 30, merges into one statutory crime "three common-law crimes of 'stealing' ": larceny by theft, larceny by embezzlement, and larceny by false pretense. *Commonwealth* v. *Mills*, 436 Mass. 387, 391-392 (2002).[7] "Larceny can be established by evidence that would have warranted a conviction upon any one of the three formerly separate charges." *Id.* at 392. Each theory of larceny has different required elements. *Id.* at 399. The elements of larceny by embezzlement are (1) that the defendant fraudulently converted to her personal use property that was under her control by virtue of a position of trust or confidence, and (2) that the defendant did so with the intent to deprive the owner of the property permanently. *Id.* at 394. To convict a defendant of larceny by embezzlement under § 30, in contrast with bank

---

[6]The first element described by the judge is more favorable to the defendants than the law requires because a bank employee who converts money belonging to a bank, as defined, need not be entrusted with custody of this money to be found guilty of the crime. See G. L. c. 266, § 52 ("shall, whether intrusted with the custody thereof or not, be guilty of larceny from such bank").

[7]General Laws c. 266, § 30 (1), provides in relevant part as follows: "Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secrets with intent to convert, the property of another . . . shall be guilty of larceny . . . ."

embezzlement under § 52, the Commonwealth need not prove that the defendant was an employee of a "bank," as defined, and need not prove that the property belonged to a "bank" or its customers. See *Commonwealth* v. *Souza*, 397 Mass. 236, 238 (1986) (identity of owner not required to prove larceny; all that need be proven is that property did not belong to defendant). Stripped of these nonessential elements of proof, the instruction the judge furnished the jury regarding the elements of bank embezzlement included all the required elements of larceny by embezzlement. Therefore, as instructed by the judge, the elements of larceny by embezzlement were a subset of the elements of bank embezzlement, making § 30 a lesser included offense of § 52.[8]

Where, as here, a jury convicted a defendant of the greater crime but there was insufficient evidence of a required element, and where the remaining untainted elements include all the elements of a lesser included offense, we generally correct the error by vacating conviction of the greater crime, and remanding for entry of conviction of the lesser included offense and for resentencing on that lesser offense. See *Commonwealth* v. *French*, 462 Mass. 41, 49-51 (2012), and cases cited (remand for entry of conviction of lesser included offense where "verdict clearly import[ed] a finding of all its essential elements"); *Commonwealth* v. *Clifford*, 254 Mass. 390, 393 (1926). Before doing so here, however, we must address three issues.

a. *Jurisdiction.* The Appeals Court stated that the Superior Court did not have jurisdiction to try indictments alleging violations of § 52 where the victim of the embezzlement is a Federal banking institution. *Commonwealth* v. *Labadie*, 82 Mass. App. Ct. at 269. The court then concluded that the error in this case could only be corrected by remanding for retrial of the lesser included offense, because "[a] verdict or finding that is supported by the evidence but is rendered by a court without jurisdiction to try that offense cannot be transmuted into a verdict or a finding on a lesser offense solely because the court had jurisdiction to try the lesser offense." *Id.*, quoting K.B. Smith, Criminal

_____

[8]Because larceny by embezzlement was a lesser included offense of bank embezzlement under the judge's instructions, we need not consider whether larceny by theft was also a lesser included offense.

Practice and Procedure § 2.1, at 34-35 (3d. ed. 2007). We do not agree with the Appeals Court that the court in this case had no jurisdiction to try indictments alleging violations of § 52.

Where a court is without jurisdiction to try an offense, a defendant tried on such an offense is not placed in jeopardy "because no valid and binding judgment could have been rendered by such court." *Commonwealth* v. *Lovett*, 374 Mass. 394, 397 (1978), quoting *Commonwealth* v. *Roby*, 12 Pick. 496, 502 (1832). Therefore, even if a defendant were found not guilty in a court without jurisdiction, double jeopardy would not protect the defendant from being retried by a court with jurisdiction. See *Commonwealth* v. *Lovett, supra* at 398 ("We conclude that the District Court had no jurisdiction over the instant offense and that, consequently, double jeopardy principles do not bar the Superior Court proceedings on the indictment charging the defendant with the commission of the same offense"); *Commonwealth* v. *Chase*, 348 Mass. 100, 105 (1964) (juvenile was not placed in jeopardy on charge of murder in second degree where court was without jurisdiction to try him for that crime). Here, the Superior Court had jurisdiction to try the defendants for a violation of § 52 and, if the defendants had been found not guilty of this offense, double jeopardy would bar them from being retried on the lesser included offense of larceny by embezzlement under § 30. The failure of the Commonwealth to prove an element of that offense — that Carcieri was an employee of a "bank," as defined — does not mean that the court was without jurisdiction to try the offense; it means only that there was a failure of proof. Because a valid and binding judgment could have been entered against each of the defendants had they been proven guilty of a violation of § 52, a valid and binding judgment of a lesser included offense may enter where only that offense was proven at trial. Compare *Ariel A.* v. *Commonwealth*, 420 Mass. 281, 287 (1995) (court knew of "no principle by which a verdict or finding supported by the evidence but rendered by a court lacking capability to try that offense, may be transmuted into a verdict or finding on a lesser offense solely because the court had jurisdiction over the lesser offense").

In concluding that the court in this case had no jurisdiction to try the offense, the Appeals Court cited *Commonwealth* v.

*Felton*, 101 Mass. 204, 206 (1869), where an officer of a national bank was convicted of a violation of Gen. St. 1860, c. 161, § 39, a predecessor statute to § 52, which forbade embezzlement from any bank, regardless of whether organized under the laws of the United States or of Massachusetts. In *Felton, supra,* the court held that Congress had enacted a law making embezzlement from a national bank a misdemeanor, making "no provision or reservation for its prosecution and punishment by any state authority," and therefore had "taken out of the jurisdiction of our courts" "the crime of embezzlement by a cashier of a national bank" located in Massachusetts. When the Legislature enacted G. L. c. 266, § 52, the definition of a "bank" specifically excluded Federal banks, and therefore obviated any claim of lack of jurisdiction premised on preemption.

b. *Preemption.* We briefly address the question whether conviction of the lesser included offense of larceny by embezzlement is barred by principles of Federal preemption where the victim is a Federal credit union and the embezzler is its employee.[9]

The United States Supreme Court has stated:

> "[S]tate law can be pre-empted in either of two general ways. [First,] [i]f Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. . . . [Second,] [i]f Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law . . . or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. . . ." (Citations omitted.)

*Silkwood* v. *Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). See

---

[9]Although the defendants have not argued that the lesser included offense of larceny by embezzlement in violation of G. L. c. 266, § 30, is preempted when the victim is a Federal credit union, we nonetheless address it because preemption would deprive the court of jurisdiction. See Mass. R. Civ. P. 12 (h) (3), 365 Mass. 754 (1974) ("Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

*Roberts* v. *Southwest Bell Mobile Sys., Inc.*, 429 Mass. 478, 486 (1999) (State laws may be "preempted by an act of Congress if the State law 'conflicts with federal law or would frustrate the federal scheme, or [if] courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States' " [citations omitted]).

Under Federal law, it is a crime for any employee of a Federal credit union to embezzle any funds belonging to that credit union or entrusted to its care. 18 U.S.C. § 657 (2012). Because the statute does not expressly preempt State prosecution, we consider whether Congress intended implicitly to preempt State prosecution of such employees for embezzlement under a general larceny statute, either because State prosecution would conflict with the Federal regulatory scheme or because Congress otherwise expressed its intention to occupy the field for all prosecutions of larceny by embezzlement from federally chartered financial institutions. See, e.g., *Roberts* v. *Southwest Bell Mobile Sys., Inc.*, 429 Mass. at 486-491. We can discern no such intention or purpose.

The mere fact that embezzlement may be prosecuted under Federal law does not, without more, preempt prosecution by the Commonwealth for the same conduct. Title 18 U.S.C. § 3231 (2012), which provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States," also provides that "[n]othing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." "[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *United States* v. *Lanza*, 260 U.S. 377, 382 (1922). See *Westfall* v. *United States*, 274 U.S. 256, 258 (1927) (proposition that State and Federal governments may punish same conduct "is too plain to need more than statement").

"[N]ational banks are subject to the laws of a state in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States." *First Nat'l Bank in St. Louis* v. *Missouri*, 263 U.S. 640,

656 (1924). "States are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." *Watters* v. *Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007).

We recognize that, when the State bank embezzlement statute, Gen. St. 1860, c. 161, § 39, included Federal banks within its scope, the Supreme Judicial Court was of the view that State prosecution of officers or employees of Federal banks under this statute was preempted by the comparable Federal bank embezzlement statute. See, e.g., *Commonwealth* v. *Felton*, 101 Mass. at 206. We need not consider whether this continues to be sound law, because since 1922, see St. 1922, c. 313, § 1, the bank embezzlement statute (§ 52) has excluded Federal banks and credit unions from its scope.[10]

The lesser included crime at issue is not limited to embezzlement by bank officers or employees but is a general crime that punishes *any* larceny by embezzlement, regardless of whether the victim is a bank or the perpetrator is a bank employee. With respect to the general crime of larceny by embezzlement, there can be no preemption if there is no material risk that Federal regulation of banking institutions will be impaired by subjecting Federal bank employees to the same prohibition against embezzlement that applies to any person entrusted with things of value. We see no such risk. "Undoubtedly a state has the legitimate power to define and punish crimes by general laws applicable to all persons within its jurisdiction." *Easton* v. *Iowa*, 188 U.S. 220, 239 (1903). More recently, the Supreme Court has recognized that States "have always enforced their general laws against national banks." *Cuomo* v. *Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 534 (2009). We note that the National Credit Union Administration (NCUA), which regulates Federal credit unions, including the credit union in this case, under the Federal Credit Union Act, 12 U.S.C. §§ 1751 et seq., states in its regulations that it is not the intent of the NCUA board to preempt State laws that do not affect the rates of interest and amount of finance

---

[10]Nor need we decide here whether preemption would render futile any attempt by the Legislature in the future to enlarge the definition of "bank" under G. L. c. 266, § 52, to include Federal banking institutions.

charges; the terms of repayment of loans and lines of credit; or other conditions related to the amount or purpose of loans or lines of credit, the type and value of security for loans or lines of credit, the eligibility of borrowers, or the imposition and enforcement of liens. 12 C.F.R. § 701.21(b)(1), (2) (2012). The general crime of larceny by embezzlement does not affect any of these variables. Nor is there any conflict between the general prohibition of larceny by embezzlement in G. L. c. 266, § 30, and the more specific prohibition against embezzlement from federally chartered financial institutions in 18 U.S.C. § 657. Therefore, we conclude that Congress did not intend to preempt the prosecution of the general crime of larceny by embezzlement where the victim is a federally chartered credit union and the perpetrator is an employee of that Federal credit union.

c. *Sufficiency of the evidence.* The final issue we need to address is whether the evidence at trial was sufficient to support convictions against Carcieri and Labadie of the lesser included offense of larceny by embezzlement.

We need not dwell on Carcieri's claim of insufficiency. She argues that there was insufficient evidence to convict her of larceny by embezzlement because there was no evidence that she had access to the safe from which the money was stolen, and therefore no evidence that the money stolen was under her control by virtue of a position of trust or confidence. Where there was evidence that Carcieri was on some mornings the first employee in the credit union before it opened, had a key to the back door and the code to disarm the alarm, and, most importantly, had apparently opened the safe that morning (because the safe was found open when the police arrived), the jury reasonably could have found that she had access to the safe arising from her position of trust as an employee.

Labadie's claim of insufficiency is far closer. Because Labadie held no position of trust with the credit union, he could be found guilty only if he knowingly participated with Carcieri in the commission of the larceny by embezzlement, with the intent required for that offense. See *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467-468 (2009). In evaluating the sufficiency of the evidence, we consider only the evidence offered in the prosecution's case-in-chief, before the defendant first moved for

a required finding of not guilty and view that evidence "in the light most favorable to the Commonwealth" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

There was abundant evidence from which a jury reasonably could infer that Labadie and Carcieri were in dire financial straits before the crime, that Carcieri falsely claimed that she had been robbed to cover up her embezzlement of the large sum of money in the credit union's safe, that Labadie acted suspiciously after the staged "robbery" by watching the considerable police presence at the credit union from the front yard of his house across the street without walking over to ask what had happened or to check on the well-being of his wife or to comfort her, that cash stolen from the credit union was found hidden in the house Labadie shared with Carcieri, and that Labadie shortly after the "robbery" used a large amount of cash to purchase money orders and donut-making equipment. This evidence plainly would have supported a conviction of Labadie of receipt of stolen property, in violation of G. L. c. 266, § 60, if that had been the offense charged. To convict him of larceny by embezzlement, there had to be sufficient evidence that he in some fashion participated in that crime, either by planning it with Carcieri, by serving as a lookout, or by assisting her in the execution of the crime. There was no evidence of planning or of Labadie serving as a lookout prior to the arrival of the police. But we conclude that a jury reasonably could have found, based on the evidence describing how Carcieri's feet and left arm were tied to the chair when the police arrived, and the photographs showing that the cordage was once tied tightly enough to leave red marks encircling both of Carcieri's wrists, that Carcieri had the assistance of another person in tying herself to the chair. A jury reasonably could also have concluded from the circumstantial evidence that the person assisting her was Labadie. Therefore, we conclude that the evidence was sufficient as a matter of law to support the convictions of Carcieri and Labadie of the lesser included offense of larceny by embezzlement.

*Conclusion.* We reverse and vacate the defendants' judgments of conviction of bank embezzlement, in violation of G. L. c. 266, § 52, and remand to the Superior Court for entry of convictions of the lesser included offense of larceny by embezzlement, in violation of G. L. c. 266, § 30, and for resentencing on those lesser offenses.

*So ordered.*