NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11820

COMMONWEALTH vs. PETER BRUNEAU.

Hampden.     April 7, 2015. - August 27, 2015.

Present: Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.

Homicide. Mental Impairment. Practice, Criminal, Appeal, Judgment.

Indictment found and returned in the Superior Court Department on October 1, 2008.

The case was heard by Richard J. Carey, J.

The Supreme Judicial Court granted an application for direct appellate review.

Rebecca A. Jacobstein, Committee for Public Counsel Services, for the defendant.
Jane Davidson Montori, Assistant District Attorney, for the Commonwealth.

DUFFLY, J. We are asked in this case to determine whether a defendant who has been found not guilty of murder in the second degree by reason of mental illness may appeal from his conviction pursuant to G. L. c. 278, § 28, or, whether, as the

Commonwealth contends, the sole avenue by which such a defendant may seek to appeal is a petition filed pursuant to G. L. c. 211, § 3.

In 2008, the defendant was indicted on a charge of murder in the first degree for the stabbing death of the victim, George Roy, but was repeatedly found not competent to stand trial until 2013. At that time, having heard testimony by a medical expert and having considered representations by defense counsel, a Superior Court judge concluded that the defendant was then competent. The Commonwealth filed a nolle prosequi with respect to so much of the indictment that charged murder in the first degree, and after a colloquy, the defendant waived his right to a jury trial and agreed to the entry of stipulations to numerous facts. The defendant's motions for a required finding of not guilty, made at the close of the Commonwealth's case and at the close of all evidence, were denied. The sole defense offered by the defendant at trial was that, at the time he committed the murder, he lacked criminal responsibility due to mental illness. In his closing argument, the defendant's counsel conceded that the defendant killed the victim by "stabbing him repeatedly." The defendant was found not guilty by reason of mental illness and ordered hospitalized at Bridgewater State Hospital pursuant to G. L. c. 123, § 16. The defendant filed an appeal under

G. L. c. 278, § 28, which the Commonwealth argues was inappropriate, and we granted his application for direct appellate review.

We conclude that a defendant who is found not guilty by reason of mental illness may appeal under G. L. c. 278, § 28. We conclude also that the evidence in this case was sufficient to support a conviction of murder in the second degree and, therefore, that the judge did not err in denying the defendant's motion for a required finding of not guilty.

Facts. We recite the facts a fact finder could have found. On September 5, 2008, Chicopee police Officer John Provost, responding to reports that the victim had not been at work for several days, went to the victim's second-floor apartment in a building on Florence Street in Chicopee to conduct a well-being check. Provost rang the doorbell and knocked loudly on the front and back doors several times, but there was no answer. After seeing an open window to the apartment, he called for a supervisor and a fire engine. Three other officers arrived on the scene. Sergeant Roy Landry and Sergeant David Heroux, the victim's nephew, again rang the doorbell and knocked loudly on the front and back doors but received no response. Members of the fire department arrived and put up a ladder to the open second-floor window; a fire fighter gained access to the

apartment and opened the back door, through which Provost and Heroux entered. The officers saw the defendant, who lived with the victim, standing in the kitchen with the fire fighter. The defendant was wearing shorts and was sweating; a pornographic movie was playing on a television. The victim's automobile was later found parked on the street outside the apartment, covered in a layer of pollen. According to Provost, this was unusual, because the victim washed his vehicle frequently, sometimes as often as daily.

In response to questions from Heroux, the defendant responded that he had not answered the door despite the repeated knocking and doorbell ringing, because he had been sleeping. When asked when he had last seen the victim the defendant said that he had not seen the victim since Tuesday night, three days previously, when the victim had come home with a "lover," a man named Chet. When Heroux again asked the defendant when he had last seen the victim, the defendant responded that it had been about two weeks earlier. Reminded that he had said he saw the victim on the previous Tuesday night, three days earlier, the defendant said, "Oh, yeah, it was Tuesday night." Landry asked the defendant if he was injured, and the defendant said either, "I got stabbed" or, "I got stab wounds also." The defendant pulled up his shirt and pulled down his pants to expose his

groin; there were no visible injuries.

The police officers searched the apartment for the victim, but he was not found. They noticed some red-brown stains on a rug in the doorway of the victim's bedroom that appeared to be blood. There were no apparent blood stains in the defendant's bedroom. There were red-brown stains on a cushioned chair in the living room, a pool of red-brown liquid in a corner of the chair, and spatter stains behind and around the chair. Police also found red-brown stains on the stairs leading to the second floor of the apartment building. A screening test of the stains on the rug and the stairs was positive for human blood. Samples were collected for further testing; that testing confirmed that the stains were human blood. Samples also were sent to the State police laboratory for deoxyribonucleic acid (DNA) testing, which established that the DNA matched that of the victim.

After obtaining a search warrant, police returned to search the defendant's apartment. They found additional stains in the kitchen in front of the oven and underneath a rug. In the defendant's bedroom, police found a hatchet leaning against a bureau. The bottom of the hatchet had a label with a bar code. Police also searched the defendant's vehicle. They found a single cinder block in the bed of the defendant's truck.

The next day, September 6, 2008, Chicopee police received

an announcement from the Vermont State police that a body had been found along the side of the road on the northbound side of Interstate Route 91.  The body, with multiple stab wounds to the abdomen,[1] was wrapped in a sheet, duct tape, and a ten-foot length of chain.  Attached to the chain was a tag with the letter "D" in white and orange, similar to a tag from a chain home improvement store.  Chicopee police arranged for George Roy's fingerprints[2] to be sent to Vermont, where testing confirmed the body was Roy's.

On their way back from Vermont, Chicopee police officers stopped at one of the chain's home improvement stores in West Springfield.  They gave store employees the bar code number from the label on the hatchet found in the defendant's room, and a description of the hatchet.  A store employee was able to determine that two such hatchets had been purchased at that store, one six days earlier, and one about a year previously.  The receipt for the hatchet that had been purchased six days earlier, in cash, showed that an eight-inch square cinder block, ten feet of zinc chain, and a pair of latex gloves had been

---

[1] There is no indication that the stab wounds were inflicted by the hatchet found in the defendant's room.

[2] George Roy's fingerprints were on file in connection with his application for a license to carry a firearm.

purchased at the same time.  Store surveillance video recordings showed the defendant making these purchases.

Discussion.  1.  Right to appeal.  There is no constitutional right to appeal from a criminal conviction.  See Dickerson v. Attorney Gen., 396 Mass. 740, 743 n.3 (1986) ("The due process clause does not require a State to afford any appellate process whatsoever").  The right to appeal is granted by statute.  See, e.g., G. L. c. 278, § 28 (appeal by persons "aggrieved by a judgment" of District or Superior Court); G. L. c. 278, § 33E (direct appeal to Supreme Judicial Court for defendants convicted of murder in first degree).

The defendant's appeal from the denial of his motion for a required finding of not guilty was filed under G. L. c. 278, § 28.  General Laws c. 278, § 28, provides that a "defendant aggrieved by a judgment of the [D]istrict [C]ourt or of the [S]uperior [C]ourt in any criminal proceeding may appeal therefrom to the [S]upreme [J]udicial [C]ourt."  The Commonwealth argues that the defendant's appeal does not lie under G. L. c. 278, § 28, because a finding of not guilty by reason of mental illness is not a "judgment," and the defendant is not "aggrieved" since he has not been convicted.  The Commonwealth contends that the defendant may seek to pursue an appeal only by filing a petition for extraordinary relief

pursuant to G. L. c. 211, § 3.[3]

We do not agree. We conclude that an appeal under G. L. c. 278, § 28, is the appropriate avenue by which a defendant found not guilty by reason of mental illness may challenge that verdict.

Prior to the enactment of the Massachusetts Rules of Appellate Procedure, we allowed a defendant found not guilty by reason of insanity to appeal under G. L. c. 278, § 33B, from the denial of his motion for a required finding of not guilty. See Commonwealth v. Curtis, 318 Mass. 584, 585 (1945) (Curtis). At that time, G. L. c. 278, § 33B,[4] controlled the procedure for

---

[3] General Laws c. 211, § 3, provides, in relevant part, "The [S]upreme [J]udicial [C]ourt shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided." Review under G. L. c. 211, § 3, is "extraordinary" and is not available "for ordinary cases." Commonwealth v. DeJesus, 440 Mass. 147, 150 (2003), quoting Commonwealth v. Lowder, 432 Mass. 92, 94 (2000). A party seeking relief under G. L. c. 211, § 3, must demonstrate a substantial violation of a substantive right and harm that cannot be remedied in the ordinary course of appeal. Commonwealth v. Negron, 441 Mass. 685, 688 n.4 (2004).

[4] General Laws c. 278, § 33B, provided:

"A defendant in a case of murder or manslaughter, or other felony . . . , aggrieved by an opinion, ruling, direction or judgment of the [S]uperior [C]ourt, rendered upon any question of law arising out of such case or upon a motion for new trial, but not upon a plea in abatement, who desires to appeal therefrom and whose exceptions thereto have been

filing an appeal from convictions under G. L. c. 278, §§ 33A-33G. General Laws c. 278, § 33B, was repealed in 1979, when the Massachusetts Rules of Appellate Procedure took effect. See St. 1979 c. 346, § 1. Today, the Massachusetts Rules of Appellate Procedure establish the procedure for filing an appeal. Although the rules changed certain aspects of the procedures to be followed in filing an appeal, compare Guerin v. Commonwealth, 337 Mass. 264, 266 (1958), with Mass. R. A. P. 8 (a), as amended, 378 Mass. 932 (1979), they "shall not be construed to extend or limit the jurisdiction, as established by law, of the Supreme Judicial Court." Mass. R. A. P. 1 (b), as amended, 421 Mass. 1601 (1995).

2. General Laws c. 278, § 28. We allowed a defendant found not guilty by reason of insanity to appeal under G. L. c. 278, § 33B, because "the defendant was aggrieved unless there was evidence warranting a verdict of guilty." Curtis, supra at 585. We must determine whether such an appeal is proper under G. L. c. 278, § 28. We review questions of statutory interpretation de novo. Sheehan v. Weaver, 467 Mass. 734, 737 (2014).

_____

seasonably saved shall, within twenty days after verdict, file a claim of appeal in writing with the clerk, who shall forthwith notify the district attorney of such claim."

a.  Judgment.  A defendant in a criminal case may appeal under G. L. c. 278, § 28, only if the defendant is "aggrieved by a judgment."  The concept of finality underlies the definition of a judgment; generally, a judgment must be final to be appealable.  See generally Crick, The Final Judgment as a Basis for Appeal, 41 Yale L.J. 539, 552 (1932) ("The basic principle, then, in practically all jurisdictions in this country is that only final judgments are appealable").  See also Judiciary Act of 1789 § 22, 1 Stat. 73, 84-85 (1789) (requiring final judgments for Federal appeals).

A judgment becomes final for purposes of appellate review "when the [court of first instance] disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment."  Clay v. United States, 537 U.S. 522, 527 (2003).  For other purposes, however, "finality attaches at a different stage . . . [at] issuance of the appellate court's mandate."  Id. (noting certain determinations under Speedy Trial Act of 1974, 18 U.S.C. § 3161).  "In a criminal case the [final judgment] rule prohibits appellate review until conviction and imposition of sentence."  Flanagan v. United States, 465 U.S. 259, 263 (1984).  See Berman v. United States, 302 U.S. 211, 212 (1937) ("[f]inal judgment in a criminal case means sentence.  The sentence is the

judgment").  The common theme is that "a 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." United States v. Vela, 624 F.3d 1148, 1151 (9th Cir. 2010), cert. denied, 131 S. Ct. 2152 (2011), quoting United States v. Ray, 375 F.3d 980, 985 (9th Cir. 2004) (concluding that defendant found not guilty by reason of insanity had right to appeal under 28 U.S.C. § 1291).  "When a criminal defendant is found guilty, it is unremarkable that there is no final judgment until the defendant is sentenced; it is only at sentencing that the criminal action terminates and 'nothing [is left] for the court to do but execute the judgment.'"  United States v. Vela, supra, quoting Midland Asphalt Corp. v. United States, 489 U.S. 794, 798 (1989).

Our jurisprudence has recognized consistently that, in general, "[i]n criminal cases, the final judgment is the sentence."  Commonwealth v. Brown, 466 Mass. 676, 679 (2013), quoting Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 621 (2011).  See, e.g., Commonwealth v. Caetano, 470 Mass. 774, 777 (2015), citing Commonwealth v. Delgado, 367 Mass. 432, 438 (1975) ("no appeal may come before us until after judgment, which in criminal cases is the sentence").  In the case of a defendant found not guilty

by reason of insanity, however, there is no sentence because there is no conviction.  See Commonwealth v. McLaughlin, 431 Mass. 506, 507 (2000) ("A verdict of not guilty by reason of insanity is not a 'conviction' within the meaning of [G. L. c. 278,] § 33E").

A verdict of not guilty by reason of insanity is, nonetheless, a final judgment.  When a finder of fact finds a criminal defendant "not guilty by reason of insanity, the docketing of the verdict amounts to a final judgment because the criminal proceeding has come to an end and no criminal sentence will follow."  United States v. Vela, supra.  See Mass. R. Crim. P. 28 (a), 378 Mass. 898 (1979).  After a verdict of not guilty by reason of insanity is docketed, there are no additional matters for a judge to dispose of, and the "court disassociates itself from the case, leaving nothing to be done . . . save execution of the judgment."  Clay v. United States, supra at 527.  An acquittal solely by reason of insanity conclusively resolves the underlying criminal proceedings, and the criminal proceeding becomes final with the verdict.  See Curtis, 318 Mass. at 585 (allowing defendant found not guilty by reason of insanity to appeal under G. L. c. 278, §§ 33A-33G); United States v. Stewart, 452 F.3d 266, 272 (3d Cir. 2006).  Civil commitment proceedings under G. L. c. 123, § 16, which follow a

verdict of not guilty by reason of mental illness, are civil in nature, not criminal.

The Commonwealth argues that a finding of not guilty by reason of insanity is an acquittal, and therefore not appealable. This contention is unavailing. An acquittal is also a judgment, notwithstanding the lack of a sentence. See, e.g., Commonwealth v. Labadie, 467 Mass. 81, 82, cert. denied, 135 S. Ct. 257 (2014). The prohibition on appealing from an acquittal comes not from its lack of finality, or because an acquittal is not a judgment, but, rather, because in the case of an acquittal, a defendant is not "aggrieved" under the statute, and therefore may not appeal under G. L. c. 278, § 28, and the double jeopardy clause bars the Commonwealth from any appeal. See, e.g., Huss v. Graves, 252 F.3d 952, 956 (8th Cir. 2001), cert. denied, 535 U.S. 933 and 535 U.S. 551 (2002) (jeopardy attached at bench trial deciding whether defendant should be found not guilty by reason of insanity; defendant could not be retried). See also Commonwealth v. Therrien, 383 Mass. 529, 532 (1981) ("It has long been accepted that the Commonwealth may not appeal from an acquittal of a criminal defendant . . .").

Although a finding of not guilty by reason of mental illness is an acquittal, in the sense that it absolves a defendant of criminal responsibility, it is unlike an acquittal

because it includes a finding that the defendant committed the criminal act. Compare Jones v. United States, 463 U.S. 354, 363 (1983) ("A verdict of not guilty by reason of insanity establishes two facts: [i] the defendant committed an act that constitutes a criminal offense, and [ii] he committed the act because of mental illness"), with United States v. Martin Linen Supply Co., 430 U.S. 564, 579 (1977) (Stevens, J., concurring in the judgment) ("true acquittal is based upon the insufficiency of the evidence to prove an element of the offense" [quotation and citation omitted]). If a jury has a reasonable doubt whether a defendant committed each of the required elements of the crime, it must find the defendant not guilty; if there is a reasonable doubt about the defendant's criminal responsibility at the time of the crime, then the jury must find the defendant not guilty by reason of mental illness. See Instruction 9.200 of the Criminal Model Jury Instructions for Use in the District Court (2009).

b. Whether defendant is "aggrieved". Where a defendant asserts a defense of mental illness, the Commonwealth must prove beyond a reasonable doubt both that the defendant committed the crime and that the defendant was criminally responsible at the time the crime was committed. See Jones v. United States, supra. If the Commonwealth has not met its burden to prove that

the defendant committed the crime, the defendant is aggrieved by a verdict of not guilty by reason of mental illness. Furthermore, although such a defendant has not been found guilty, and has not been sentenced, a defendant found not guilty by reason of mental illness faces harsh consequences because the defendant is eligible for civil commitment under strict security, where he would be confined for an indefinite period of time. See G. L. c. 123, § 16. Accordingly, where a defendant chooses to pursue a defense of lack of criminal responsibility due to mental illness, judges are required, upon request by the defendant, to inform the jury of the "consequences of a verdict of not guilty by reason of insanity." See Commonwealth v. Biancardi, 421 Mass. 251, 251-252 (1995), quoting Commonwealth v. Mutina, 366 Mass. 810, 823 n.12 (1975).

Because a defendant found not guilty by reason of mental illness has been "aggrieved by a judgment," the defendant may appeal from that verdict under G. L. c. 278, § 28.[5]

---

[5] We recognize that Mass. R. Crim. P. 28 (c), 378 Mass. 898 (1979), which provides for notification of the right to appeal "[a]fter a judgment of guilty is entered," does not by its terms require notification for defendants found not guilty by reason of mental illness of their right to appeal. We therefore refer the rule to the standing committee of this court for criminal rules. See Commonwealth v. Simmons, 448 Mass. 687, 699-700 (2007).

3.  Sufficiency of the evidence.  We review a denial of a motion for a required finding of not guilty to determine whether, viewing the evidence in the light most favorable to the Commonwealth, there is sufficient evidence for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.  Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  "We consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time."  Commonwealth v. Sheline, 391 Mass. 279, 283 (1984).

"Murder in the second degree is the unlawful killing of a human being with malice aforethought."  Commonwealth v. McGuirk, 376 Mass. 338, 344 (1978), cert. denied, 439 U.S. 1120 (1979).  "Circumstantial evidence alone may be sufficient to meet the burden of establishing guilt."  Commonwealth v. Woods, 466 Mass. 707, 713, cert. denied. 134 S. Ct. 2855 (2014).  "[I]nferences drawn from that evidence 'need only be reasonable and possible'; [they] need not be necessary or inescapable."  Id., quoting Commonwealth v. Merola, 405 Mass. 529, 533 (1989).

Here, viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence from which a trier of fact could have concluded that the defendant had committed each element of the crime, and thus that the

defendant's motion for a required finding of not guilty properly was denied.

A fact finder could infer from the many blood stains in the apartment that the victim had been stabbed to death in the apartment he shared with the defendant. The receipt from the purchases at the home improvement store support an inference that the defendant acquired the means to kill, and planned to kill, the victim. A surveillance video recording of the defendant, recorded six days before the body was found, shows him purchasing a hatchet identical to the one found in his bedroom, a cinder block of the sort found in his truck, latex gloves, and ten feet of zinc chain identical to the chain used to bind the victim's body. The hatchet and the chain both had inventory labels on them with bar code numbers matching those on the receipt associated with the defendant's purchases, which were matched to the store's inventory. This evidence "allowed a rational jury to infer that the defendant had the means (one of the tools lying around the victim's house) and opportunity to kill the victim." Commonwealth v. Evans, 469 Mass. 834, 843 (2014). The evidence "not only corroborate[d] the essential elements needed to convict the defendant [of murder] but also link[ed him] to the crime." Commonwealth v. Vacher, 469 Mass. 425, 440 (2014), quoting Commonwealth v. Fernandes, 425 Mass.

357, 360 (1997).  See Commonwealth v. Donahue, 430 Mass. 710, 711 (2000) (sufficient evidence of murder in first degree where human blood stains were present in bedroom, basement, and defendant's automobile, receipts were found for purchase of fifty-gallon plastic container and storage locker rental, and defendant stored victim's body in identical container in storage locker); Commonwealth v. Taylor, 426 Mass. 189, 192-193 (1997) (sufficient evidence that defendant "deliberately set fire with specific intent to murder his parents" where, among other things, defendant put gasoline he bought in portable canister day before fire).

There was also considerable evidence that the defendant demonstrated consciousness of guilt.  The defendant did not answer the door in response to repeated knocking by police.  See Commonwealth v. Toney, 385 Mass. 575, 584 (1982) (inference of consciousness of guilt "may be drawn from evidence of flight, concealment, or similar acts").  After the fire fighter ultimately entered through a window and admitted the police officers, the defendant's statements to police about when he had last seen the victim were inconsistent.  See Commonwealth v. Woods, supra at 715 (consciousness of guilt "includes making false or inconsistent statements to police").

The defendant also told officers that he had been "stabbed"

or that he had "stab wounds also," although he had no apparent injuries. This evidence supported an inference that the defendant was present at the time of the stabbing, and stabbed the victim, because he had knowledge of the method of the killing. See Commonwealth v. Thompson, 431 Mass. 108, 114, cert. denied, 531 U.S. 864 (2000) (sufficient evidence where defendant assumed victim "had been stabbed even though he had not been informed of the circumstances of [the victim's] death"); Commonwealth v. Cordle, 404 Mass. 733, 741-742 (1989), S.C., 412 Mass. 172 (1992) (sufficient evidence where jury plausibly could infer defendant was present at time of shooting, had motive for killing, and evidenced consciousness of guilt). In addition, the defendant expressed no alarm over the blood stains in the apartment that were readily apparent. See Commonwealth v. Thompson, supra (defendant's unusual behavior included lack of inquiry as to manner of victim's death).

Although a conviction may not "rest upon the piling of inference upon inference or on conjecture and speculation." Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011), viewing these facts in the light most favorable to the Commonwealth, there was

sufficient evidence to establish that the defendant committed each element of the murder.

<u>Judgment affirmed</u>.